14 Ill.2d 28 (1958)
150 N.E.2d 593
THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee,
v.
JOSEPH J. DROBNICK et al.  (JOSEPH J. DROBNICK, Appellant.)
No. 34692.
Supreme Court of Illinois.
Opinion filed May 21, 1958.
*29 MARK DROBNICK, of Waukegan, for appellant.
LATHAM CASTLE, Attorney General, of Springfield, (ALBERT L. HALL, of Waukegan, of counsel,) for appellee.
Judgment affirmed.
Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:
This is an appeal from a judgment of the county court of Lake County in a condemnation proceeding instituted by the Department of Public Works and Buildings of the State of Illinois, as petitioner. Final judgment was entered upon a jury verdict fixing compensation at $4,800 for land taken and $385 for damages to land not taken. Joseph J. Drobnick, herein referred to as defendant, appealed from this judgment and the denial of his motion for a new trial.
*30 On November 1, 1956, petitioner filed its suit to condemn an 80-foot strip across the front of two lots owned by defendants, for the purpose of widening Belvidere Road, also known as State Route 120, in Waukegan Township, Lake County. The property consists of two adjoining unimproved lots, each having a frontage on Belvidere Road of 299.5 feet, and a depth of approximately 466.5 feet. These lots are bounded by Walnut Avenue on the east and Chestnut Avenue on the west. Lot 1 is easterly of the common boundary line between such lots and lot 2 is westerly thereof.
An engineer of petitioner testified concerning the nature of the proposed improvement: Belvidere Road was to be widened into a four-lane highway for split traffic, east and west, and would gradually rise to overpass relocated Skokie highway to the west. The road section would consist of two 24-foot pavements with 10-foot shoulders, and a four-foot median strip with a two-foot walkway on each side of the traffic lanes. A new 22-foot blacktop frontage road would be installed between Chestnut and Walnut to furnish the subject property with access to Belvidere Road by way of Walnut Avenue on the east, and the Chestnut Avenue entrance thereto would be closed. The improvement would rise in grade from east to west, starting with the present Belvidere Road elevation at the easterly boundary of lot 1, and ascending to three feet at the boundary line between lots 1 and 2, and to 11 feet at the westerly boundary of lot 2.
Two real-estate appraisers testified on behalf of petitioner: Leslie Bamberg, who had 33 years of experience in this work testified that the subject property was zoned for residential purposes, was rolling and unimproved and part of its present grade was below that of Belvidere Road; that the property to the east and west was vacant; that a small house was located about 500 feet to the east and a motel further to the east; that a trailer court was situated *31 on the opposite side of the street and a radio station, a tractor showroom and another motel in the area along Belvidere Road; that the highest and best use of the property, as zoned, was for residential purposes; and that he was of the opinion that the fair cash market value of each lot was $6,600, and the value of the land taken from each lot, $1,100. Theodore E. Paxton, a real-estate broker for 11 years, testified that the highest and best use of the property under present zoning was for residential purposes; and that he was of the opinion that the fair cash market value of lot 1 was $8,200, lot 2, $9,000, the land taken from lot 1, $1,200, and from lot 2, $1,500.
Petitioner then called the county clerk who testified, after reference to a zoning map, that the property was zoned residential, and rested its case in chief. However, at the reconvening of court on the following day, petitioner moved for leave to reopen its case to correct an error in testimony relative to zoning. Leave was granted over the objection of defendant, and the ensuing proof showed that the subject property had been rezoned from R-3 residential to light industrial in June, 1956, upon petition of defendant.
Petitioner's real-estate experts were recalled and expressed revised opinions of value based upon the less restrictive zoning. Paxton was of the opinion that the value of lot 1 was $10,600, lot 2, $11,200; the land taken from lot 1, $1,600, and from lot 2, $2,000. Bamberg testified that the value of lot 1 was $10,500, lot 2, $10,000, and the land taken from lot 1, $1,650, and from lot 2, $1,675.
The defendant testified on his own behalf that he had been a real-estate broker since 1936. And, after considerable testimony concerning the surrounding area, the availability of utilities and sewers, and the advantageous qualities of these particular lots, he was permitted to testify that he was of the opinion that the fair cash market value of each lot was $45,000; the land taken from each lot, $15,000; and that the damage to that part of lot 1 not taken was *32 $10,000, and to that part of lot 2 not taken, $15,000. Defendant introduced other testimony as to the use of land in the area, and the availability of sewers and water.
Defendant also introduced evidence of the sale of two similar tracts of land. One, an unimproved tract with 133-foot frontage on Belvidere Road and a depth of 584.9 feet, was sold on contract in November, 1955, for a total price of $9,500. The contract provided for a down payment of $1,000, the balance to be paid at the rate of $100 a month with interest at 6 per cent on the unpaid balance. The other tract contained 5.5 acres, had a 260-foot frontage on Belvidere Road and was purchased by the defendant in June, 1956, for $15,000. Both tracts were zoned for residential purposes. Other offers of evidence concerning sales were rejected.
In rebuttal, Paxton testified that the taking and proposed improvement would result in no damage to the part of lot 1 not taken and would damage the part of lot 2 not taken in the sum of $265. Bamberg testified that due to the benefit of the proposed improvement, there would be no damage to the land not taken.
The jury, accompanied by defendant and his attorney, viewed the premises, and thereafter returned a verdict which fixed the compensation for the land taken from lot 1 at $2,400, found no damage to the part of lot 1 not taken, fixed the compensation for the land taken from lot 2 at $2,400, and assessed damages to that part of lot 2 not taken at $385.
Upon this appeal we have considered the many errors assigned by the defendant and shall first deal with the alleged error of permitting the reopening of petitioner's case. Petitioner, uninformed of defendant's recent rezoning of the property, at first proceeded under a misapprehension relative to its correct zoning. Upon learning of this, petitioner immediately took steps to present the true facts. The defendant was neither inconvenienced nor surprised, but *33 rather sat back with full knowledge of the facts ready to take advantage of the inadvertent error of the county clerk and petitioner. His rights were not prejudiced by the court's ruling which allowed the petitioner to reopen its case on the second day of the trial, nor was there any reason for the court to order a new trial. We find that the trial judge acted within his discretion and followed sound administrative practice in permitting petitioner to reopen its case.
Defendant also complained that he was not permitted to cross-examine petitioner's experts with regard to possible uses not permitted under residential zoning. This ruling on initial cross-examination was based upon the erroneous assumption that the property was zoned residential. However, both real-estate experts were recalled after the light industrial zoning had been established and were further cross-examined without limitation. We therefore find no reversible error in the ruling on the prior cross-examination.
Defendant contended that the record does not sustain the verdict because the expert witnesses for the petitioner testified relative to property located in Warren Township while the subject premises are in Waukegan Township. It is true that the witnesses, in giving the legal description of the property, placed it in range 11 east rather than in range 12, where it is actually located. However, this obvious clerical error created no prejudice. The petition, verdict and judgment correctly described the premises, and it is clear from the record that the jury viewed and the witnesses testified concerning the actual premises in question. Defendant's highly technical contention in this respect is without merit.
Defendant further urged that the trial court aided the petitioner in filling gaps in the evidence, and in unduly limiting his cross-examination. We have carefully examined the entire record and find no justification for such *34 claim. Although the court asked certain questions which were obviously directed at limiting testimony concerning value to the time of filing the petition, we find no impropriety in this practice. While the court sustained many objections to specific questions posed by counsel for defendant, which were either argumentative in form, immaterial, or otherwise defective, we conclude that defendant was given wide latitude in both direct and cross-examination. The record indicates that the trial was fairly conducted, and we find no reversible error in the remarks of the court.
We turn next to the rulings on the admissibility of evidence of sales of other property. Defendant was permitted to prove sales of two comparable properties in the area. He also sought to prove a recent sale of a tract, called the Helmer property, which was a residential lot 58.8 feet by 150 feet, about a half-mile from the lots in question. This tract was reasonably level and had trees on it. This evidence was rejected, as was evidence of sales of residential lots in an entirely different area. It is well settled that evidence of voluntary sales of comparable property in the vicinity is admissible in evidence to aid the jury in determining the value of the land to be taken. (City of Chicago v. Harbecke, 409 Ill. 425.) However, the party offering the proof must first show that the land so sold was similar in locality and character to the land sought to be acquired. (Forest Preserve District v. Chilvers, 344 Ill. 573, 577.) And the matter of admission of comparable sales must be left largely to the discretion of the trial judge. (Forest Preserve District v. Kercher, 394 Ill. 11; Forest Preserve District v. Dearlove, 337 Ill. 555.) In view of the difference in zoning, location, proximity and character of the Helmer tract, and the difference in zoning and distance of other residential tracts, the trial court did not abuse its discretion in rejecting evidence concerning the sale price of such parcels of land.
*35 Defendant also complained of the instructions given and refused. Petitioner tendered 18 instructions, 4 of which were refused; defendant tendered 23 instructions, of which 10 were refused. On motion for a new trial, defendant made only a general objection to the giving of petitioner's instructions and the refusing of defendant's instructions. Here he attacks them as conflicting and repetitive. We have examined the instructions given by the court and find that, taken as a series, they fairly state the applicable law and, even though unduly verbose, they would not tend to confuse or prejudice the jury.
Defendant urged that the verdict was against the manifest weight of the evidence. We have repeatedly held that where the evidence as to value is conflicting in a condemnation proceeding, and the jury, having viewed the premises, fixes the amount of compensation for land taken and of damages to land not taken within the range of the testimony, the award will not be disturbed unless there is something in the record which shows that the verdict was a clear and palpable mistake or the result of passion and prejudice, or unless there was some erroneous ruling which might have misled the jury. (Union Electric Power Co. v. Sauget, 1 Ill.2d 125; City of Chicago v. Harbecke, 409 Ill. 425; Forest Preserve District v. Draper, 387 Ill. 149; City of Mount Olive v. Braje, 366 Ill. 132.) In the present case, the verdict of the jury was approximately 25 per cent higher than the maximum value set by petitioner's experts. This record offers no support to defendant's contention.
We have considered all other errors assigned and find them to be without merit. From the entire record, we conclude that the defendant received a fair trial and find no reason to disturb the judgment of the trial court. A more extended opinion would serve no useful purpose. The judgment of the county court of Lake County is accordingly affirmed.
Judgment affirmed.