(No. 35830.—

CATHERINE M. MUSCARELLO, Appellant, *vs.* ELAINE PETERSON, Appellee.

*Opinion filed December 1, 1960.*

SOLFISBURG, J., took no part.

LIDSCHIN & PUCIN, of Waukegan, and THOMPSON, LEWIN & RAFFERTY, of Chicago, for appellant.

SNYDER, CLARKE, DALZIEL, HOLMQUIST & JOHNSON, of Waukegan, (WILLIAM A. HOLMQUIST, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Catherine M. Muscarello, a minor, by her father and next friend, brought an action in the circuit court of Lake County against Elaine Peterson for injuries sustained in an automobile accident. A jury trial was had, resulting in a verdict and judgment for the plaintiff in the amount of $2,000. On appeal by the plaintiff the judgment was af-

firmed in the Appellate Court. (24 Ill. App. 2d 262.) We have granted plaintiff leave to appeal to this court for further review.

Defendant's liability is not disputed. The principal issue in the trial court was whether an epileptic condition testified to by the plaintiff's parents was caused by injuries received in the accident. It is claimed on plaintiff's behalf that the damages recovered are inadequate, and that this result was brought about because the trial court unduly restricted the cross-examination of defendant's medical witness. It is also urged that plaintiff was deprived of a fair trial because an adjuster for defendant's insurance carrier, in furnishing to the parents a copy of the doctor's medical report, omitted therefrom a paragraph in the original report indicating that there was a causal connection.

The accident occurred on June 5, 1955, as the plaintiff, a child six years of age, was riding in the rear seat of an automobile driven by her father. The car was struck by defendant's automobile, and plaintiff was thrown to the floor of the car. According to the testimony of her parents she was unconscious for a moment or two. Evidence on plaintiff's behalf further showed that on several occasions during the next few days she complained of headaches and stomach pains, and exhibited signs of nervousness. On June 9 she was taken to Dr. Adelman, the family physician. His examination revealed some contusions and abrasions on the forehead and chest, but her reflexes were normal.

In mid-August, while the family was returning from a trip to North Dakota, plaintiff suffered a convulsion or seizure in the automobile. In September two more seizures were experienced and plaintiff was then hospitalized for observation under the care of Dr. Adelman. After conducting a neurological examination and a general examination the doctor found no significant abnormality. He made a tentative diagnosis of post-traumatic convulsions, and referred the

plaintiff to Dr. Frederick A. Gibbs, a professor of neurology and neuro-physiology and a specialist in electroencephalography and epilepsy. On September 12 Dr. Gibbs recorded an electroencephalograph on the plaintiff which was normal in all areas.

On February 14, 1956, at the request of defendant's insurance carrier, plaintiff was examined by Dr. H. R. Oberhill, the physician and neuro-surgeon who subsequently made the report hereinafter described. Dr. Oberhill referred plaintiff to Dr. Gibbs for a second series of electroencephalograms, which was made on February 24, 1956. This test, as well as subsequent ones on the following April 1 and November 2, showed certain positive results known as spike seizure discharges. After his examination of February 14, Dr. Oberhill mailed a written report to the insurance company, dated Februry 18, 1956, wherein he set forth at length plaintiff's history, the details of the accident and subsequent symptoms as related to him, the treatment or medications prescribed, and the nature of the examination he performed. The concluding two paragraphs of the letter read as follows:

"We have ordered an electroencephalogram to be made by Dr. F. A. Gibbs on February 24, 1956, and once we receive the results of that examination we will, of course, write you further.

"We are confronted here with a rather difficult problem as to cause and effect. We cannot deny that Catherine is suffering from a seeming convulsive state of a Jacksonian pattern, but what the cause might be I cannot say. With the accident having occurred some two months previously and with her having suffered a head injury which caused her to be unconscious for a brief period I cannot see how the two can be separated. In general I would expect a much more serious 'head injury' with a long period of unconsciousness, before the usual '30%' pertains. It has been our experience that people suffering extensive head injuries with long periods of unconsciousness may in some 30% suffer convulsive seizures at a later date. Though this may be merely coincidental, and the child might possibly have suffered convulsive seizures even without the injury, I cannot honestly say that we can separate the accident and her seizures."

An insurance adjuster thereafter sent to the plaintiff's parents what purported to be a copy of the letter. The copy sent omitted the last paragraph of the letter.

At the trial defendant called Dr. Oberhill as an expert witness. In answer to a hypothetical question based upon facts as shown by the plaintiff's evidence, he stated as his opinion that the described condition of ill-being at the time of the trial was not connected with a blow on the head such as that sustained by the plaintiff. He further expressed an opinion that the encephalogram is not a reliable test for epilepsy. In cross-examining the doctor, the plaintiff's attorney sought to discredit his testimony about the value of an electroencephalogram by showing that after his examination of the plaintiff he did in fact order an electroencephalographic test to be made on her. An objection to the questioning was sustained on the ground that the direct examination had been limited to a hypothetical question and that the attempted cross-examination was beyond the scope of matters brought out on direct. The plaintiff thereafter called Dr. Oberhill as her own witness and brought out the fact that he had examined her and arranged for an electroencephalogram to be made which later revealed a spike seizure focus in the right mid-temporal area.

In being questioned about the contents of his February 18 report concerning the nature of the disturbances, Dr. Oberhill produced a copy of the letter. Plaintiff's counsel asked to read the copy; and he then discovered the fact that the last paragraph, expressing the probability of a causal connection between the accident and the seizures, had not appeared in the copy received by plaintiff's parents. The attorney thereupon had his partial copy marked for identification as an exhibit; and during argument on a post-trial motion some two months after judgment had been entered, it was incorporated into the record together with the original letter.

Plaintiff complains first that prejudicial error was com-

mitted in restricting the cross-examination of Dr. Oberhill. The record shows that objections were made to questions whether the witness had accepted the plaintiff's history as related by her mother, and whether he formed a diagnosis after he had examined her. In sustaining the objections the court pointed out that the only question asked on direct examination was a hypothetical one. Plaintiff's counsel then observed that "the question of the value of an electro-encephalogram has been made, and I am leading up to that, if your Honor please." His request to be heard out of the presence of the jury was granted, and he then stated "I expect to show, if your Honor please, by this witness, that he examined this young lady, gave her a neurological examination, took a history, and then withheld his opinion until he caused an electroencephalogram to be made; and then, after that, reported that there was enough in that electro-encephalogram to show convulsions. And I think that is perfectly proper to impeach his testimony on his claim to the valuation of the electroencephalogram." The court then re-affirmed its ruling that the questions were improper as beyond the purview of direct examination. As we have related above, after counsel completed his cross-examination he called Dr. Oberhill as a witness on plaintiff's behalf, and elicited the testimony which he had unsuccessfully sought to bring out previously on cross-examination.

We think the trial court should have permitted a wider latitude in the cross-examination of this important witness; and that in view of later developments, whereby it appeared that an incomplete and misleading copy of his report had been delivered to the plaintiff, it was error to deny the motion for a new trial. The rule is, of course, a familiar one that cross-examination of a witness should be confined to matters brought out upon the direct examination. (*Hansen v. Miller*, 145 Ill. 538.) But in determining the scope of the "matter" testified to on direct examination the rule is not to be given a narrow or technical application. (*West*

*Chicago St. R. R. Co.* v. *Reddy*, 69 Ill. App. 53.) This is especially true with respect to expert testimony on matters not within common knowledge and experience. That class of evidence, while often necessary, has long been regarded as one of the least satisfactory methods of proof. As this court observed in *Opp* v. *Pryor*, 294 Ill. 538: "The opinion has the sanction of an oath but lacks the substantial safeguard of truth applied to testimony concerning facts observed by a witness which is afforded by the criminal law since the opinion is the result of reasoning, and no one can be prosecuted for defective mental processes. The field of medicine is not an exact science, and the expert being immune from penalties for perjury, his opinion is too often the natural and expected result of his employment." Great latitude is accordingly allowed in the cross-examination of an expert medical witness testifying hypothetically as in the case at bar (*Moennich* v. *City of Chicago*, 147 Ill. App. 553,) and it is a well-recognized purpose of cross-examination to show matters which affect the credibility of the witness. (*Cruz* v. *Gulf, Mobile & Ohio Railroad Co.* 7 Ill. App. 2d 209.) While a large discretion is necessarily left to the trial judge in determining the range to be allowed in cross-examining a witness (*McCray* v. *Illinois Central Railroad Co.* 12 Ill. App. 2d 425,) the discretion should be a reasonable one, and cross-examination should not be excluded on subjects embraced or included in the examination in chief, if such ruling may prejudice the cross-examining party. (See *Spohr* v. *City of Chicago*, 206 Ill. 441, 445.) Even though the particular questions in the case at bar were not concerned with the portion of the doctor's report relating to causation, the plaintiff's attorneys were in ignorance of its existence through gross misconduct on behalf of defendant's insurance carrier, and under the peculiar circumstances in this case it may be assumed that the ruling resulted in prejudice to the interests of the plaintiff.

It is true, as defendant points out, that the plaintiff's

attorneys, after they discovered the paragraph in question had been deleted, made no attempt to question the witness about its contents. They did not call his attention to the statements for the purpose of refreshing his memory or awakening his conscience, nor did they request that he be recalled for further cross-examination. If such a course had been pursued or attempted, and the witness did not admit making the inconsistent statement, its contents could have been put in evidence on rebuttal. (*Chicago City Railway Co.* v. *Matthieson,* 212 Ill. 292.) Under ordinary circumstances the failure to seek or obtain any ruling upon the matter would leave nothing for this court to review; and the exercise of discretion by the trial court in denying a new trial could not be disturbed.

The present case, however, involves the interests of a minor, as well as affirmative misconduct by the insurer of the opposite party. The court has a duty to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented on its behalf. (*McReynolds* v. *Miller,* 372 Ill. 151.) Moreover, as the Appellate Court has recently observed, "It is certainly the tendency of justice in our age that causes should not be determined by the technicalities of procedure but the court should attempt to do substantial justice when all the facts are completely disclosed." (*Simmons* v. *Columbus Venetian Stevens Bldgs., Inc.,* 20 Ill. App. 2d 1, 9.) If a litigant or his representative engages in conduct so prejudicial and reprehensible that the other party cannot receive a fair trial and the judicial process stand without deterioration, this court will review and consider assignments of error even though no objection was made and no ruling made or preserved in the trial court. (*Belfield* v. *Coop,* 8 Ill.2d 293, 313.) In the case at bar the question of causation was the principal issue, and the testimony of Dr. Oberhill was of crucial importance thereon. The alteration of his report was obviously calculated to

deceive the plaintiff and her counsel. The defendant, in calling this same doctor as a witness, examined him only as to a hypothetical question, and elicited an opinion which was in substantial contradiction to the statements which had been deleted in the copy of his report. We think that on the entire record this minor plaintiff did not receive the protection to which she was entitled, and that in the interests of justice and fairness a new trial should be ordered.

We cannot condemn too strongly the conduct of whoever was responsible for the deception attempted here. We shall refrain from commenting at length upon this feature of the case, however, since we trust that in view of Rule 17—1 of this court similar questions will not arise in the future.

The judgment of the Appellate Court and the judgment of the circuit court of Lake County are reversed, and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*

Mr. JUSTICE SOLFISBURG took no part in the consideration or decision of this case.