THE CITY OF CHICAGO, Petitioner-Appellee, v. AVENUE STATE BANK et al., Defendants.—(CHICAGO TITLE AND TRUST COMPANY, Defendant-Appellant.)

(No. 55700; )

First District—February 22, 1972.

*Rehearing denied March 29, 1972.*

Concannon, Dillon, Snook and Morton, of Chicago, (John B. Dillon and John Mulder, of counsel,) for appellant.

Richard L. Curry, Corporation Council, of Chicago, (William R. Quinlan and Daniel Pascale, of counsel,) for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court (as modified on the denial of petitioner's petition for rehearing):

City of Chicago (petitioner) brought this action to acquire the subject property from Chicago Title & Trust Company, as Trustee (owner). The jury viewed the property and returned a verdict awarding $60,000. The owner appeals, raising contentions hereinafter set forth.

The subject property is one of several parcels comprising the so-called Madison-Canal Urban Renewal Redevelopment Project in Chicago. It is commonly known as 544-550 West Madison Street and is located on the north side of Madison Street between Jefferson and Clinton Streets. It fronts 63.5 feet on Madison Street and is 100 feet deep; comprising 6350 square feet. Calculation shows that the amount awarded by the jury is approximately $9.44 per square foot. The property is improved with a one-story building divided into four stores. It is zoned B-7-5; permitting various business uses. The improvements are approximately 50 to 55 years old.

Petitioner called two valuation witnesses. They both gave opinions that the highest and best use of the subject property was its present use. One witness combined this with a consideration of the possibility of holding the property for future development. One of these witnesses testified that the fair cash market value of the subject property on July 22, 1969, when petition for condemnation was filed, was $50,000 and the other valued the property at $48,500. These valuations are respectively equivalent to approximately $7.87 and $7.63 per square foot.

The owner called three valuation experts. They all agreed that the highest and best use of the property was continuation of its present use and holding it for future development. One of these witnesses added the element of consideration of an interim use for automobile parking.

These witnesses valued the property at $120,000, $130,000 and $168,000, respectively, equivalent to approximately $18.89, $20.47 and $26.45 per square foot.

Over objection duly made by counsel for the owner, the court permitted petitioner to prove sale of a parcel of real estate at 14-30 West Harrison Street in Chicago as comparable to the subject property. The owner offered proof of sale of three parcels of real estate at the southwest corner of Madison and Canal Streets and also of three parcels on the west side of Wacker Drive between Jackson and Van Buren Streets as comparables. The court sustained objections of petitioner to this proof. [The court permitted the owner to prove sale of real estate at 111 North DesPlaines Street in Chicago as being comparable to the subject property. This real estate was sold in January of 1966 for $60,000; or about $16 per square foot for its area of some 3800 square feet. It is located approximately two blocks from the subject property and was improved with a three story brick building. This evidence was not the subject of argument in this court by either party.]

The owner contends that prejudicial error is apparent in the record in that: 1) the court should not have rejected evidence regarding the two comparable situations tendered by the owner; 2) the court should not have admitted evidence of the sale of the Harrison Street property tendered by petitioner; 3) there was undue restriction of cross-examination of petitioner's expert witnesses by counsel for the owner combined with prejudicial comments and remarks by the trial court; and 4) counsel for petitioner made unduly prejudicial closing arguments. These points will be considered in order.

■■ The first two contentions raised by the owner are directed to rulings of the court with reference to proof of comparable sales. In *Department of Public Works v. Drobnick*, 14 Ill.2d 28, 34, the Supreme Court of Illinois set forth the basic rules which apply to this type of proof as follows:

"It is well settled that evidence of voluntary sales of comparable property in the vicinity is admissible in evidence to aid the jury in determining the value of the land to be taken. (*City of Chicago v. Harbecke*, 409 Ill. 425.) However, the party offering the proof must first show that the land so sold was similar in locality and character to the land sought to be acquired. (*Forest Preserve District v. Chilvers*, 344 Ill. 573, 577.) And the matter of admission of comparable sales must be left largely to the discretion of the trial judge." *Forest Preserve District v. Kercher*, 394 Ill. 11; *Forest Preserve District v. Dearlove*, 337 Ill. 555.

We will first apply these principles to the rulings of the court which

rejected evidence of comparable sales tendered by the owner. Three contiguous parcels of vacant property on the south side of Madison Street between Clinton and Canal Streets were acquired by the real estate engineer of Illinois Bell Telephone Company for corporate use. One of these parcels comprised 42,000 square feet and the remaining two were 3600 square feet each; a total area of 49,200 square feet. Despite the close proximity of these three parcels to the subject property, the court was obliged to consider certain unique features in determining admissibility of the sales.

■■ The Illinois Bell Telephone Company, as a public utility, had the right to acquire these parcels as provided by the law of eminent domain. (Ill. Rev. Stat. 1969, ch. 111⅔, par. 63.) It follows logically from this premise that the price paid in a situation of this type would not be competent as comparable evidence in the case at bar. (*Peoria Gas Light Co. v. Peoria Term. Ry.*, 146 Ill. 372, 378.) There is an issue in the evidence as to whether the sellers knew that the Illinois Bell Telephone Company was the actual purchaser. All negotiations were carried on by the real estate engineer of the company in his own name and he did not disclose his principal. However, there is evidence that a broker in the transaction representing the seller was aware of the true identity of the purchaser. The brokerage commission might well be expected to vary in proportion to the amount of the sale. Furthermore, there were other factors involved in the comparability of the three sales. Underground cables run under the site in question and the evidence shows that the proximity of this equipment made the land unique to the Bell Telephone Company as it made possible large annual savings by the company. This may well have been an important consideration in motivating the purchase as well as affecting the price paid. Perhaps of greater importance, the acquisition of the two smaller parcels was subject to a contingency that the purchaser would also be able to acquire the larger parcel. Upon due consideration of all of these factors, we find that the court acted well within the bounds of reasonable discretion in rejecting evidence of the sale of these three parcels.

■■ The second group of sales tendered as comparable by the owner involved three contiguous parcels of real estate on the west side of Wacker Drive between Jackson Boulevard and Van Buren Street. This site is approximately five and one-half or six blocks from the subject property. The sales took place in the latter part of 1968 and early 1969. The size of the three parcels varied with one being 8000 square feet, another 7550 square feet and the third 5000 square feet or a total of 20,550 square feet.

This real estate was acquired [for erection of a large office structure

more than 30 stories in height with a total building area of approximately 500,000 square feet.] The contingency of possible creation of a comparable project including the subject property was very much in the future as of the time of the filing of the petition. As the testimony here shows, the element of passage of time is very important in connection with land use.

In addition, the locality of the properties tendered as comparable sales is quite different from the locality of the subject property. The area of the property tendered as comparable which is immediately between West Wacker Drive and the Chicago River is well known as an area of tremendously rapid growth and development. The subject property has been for years in the area descriptively referred to as "Skid Row." In this regard, the arguments made by the owner in the following point regarding comparability of the property at 14-30 West Harrison Street are most applicable. The disparity between the tendered locality and the case at bar is immediately apparent and decisively complete. We conclude that in this instance also, the ruling of the trial court was well within the bounds of reasonable discretion.

Regarding the next contention of the owner, the court permitted petitioner to prove sale of the property at 14-30 West Harrison Street on July 25, 1967, for the sum of $42,000. This was done after a preliminary hearing outside of the presence of the jury at which time the owner objected on the grounds that the sale of this property submitted as a comparable situation was not sufficiently similar to the subject property as regards its character and its location. Proof of this selling price gave the comparable property a valuation of approximately $8 per square foot.

The Harrison Street property is improved with a brick and frame building about 60 years old containing five stores. The size of the ground is 50 feet by 100 feet. It is located approximately 11 blocks from the subject property. However, the principal issue here goes beyond a consideration of the physical similarities between the two properties. As above pointed out, there is a legal requirement that the party offering comparable sales must show similarity in locality with the subject property.

■■ The reason for this requirement is readily apparent. The location of a piece of ground is one of the important considerations in determining its value. In the case at bar, petitioner did not prove, before the jury, any elements of similarity between the location of the subject property and the alleged comparable property on Harrison Street. On the contrary, one of the witnesses tendered by petitioner testified on cross-examination that to his knowledge the area of 14-30 West Harrison

Street was an old established neighborhood at the time of the sale and that there was no new construction of substantial buildings in the vicinity. Another expert tendered by petitioner testified that the only two examples of new construction in the general area of the alleged comparable property were the new Jones Commercial High School and construction done at the Police Headquarters in the vicinity of 11th and State Streets. This expert conceded in effect that the locality of the subject property was quite different by virtue of the fact that the Illinois Bell Telephone Company constructed a large building on the south side of Madison Street approximately one-half block east of the subject property; and, in addition, there is a large office building known as the Tishman building located on the southeast corner of Madison and Canal Streets immediately east of the Bell Telephone building and approximately one and one-half blocks east of the subject property. We may add here that it is virtually common knowledge among the citizens of Chicago that there is a considerable amount of new construction of large and significant buildings between the east side of Canal Street and the west bank of the Chicago River in the vicinity of the subject property as well as a great deal of building activity on the west side of Wacker Drive from Randolph Street south to Van Buren Street. Wacker Drive is located a short distance east of the subject property. Proceeding in an easterly direction on Madison Street from the subject property, we find Clinton Street, Canal Street, the Chicago River and then Wacker Drive.

As above set forth, the matter of ruling upon competency of comparable sales in condemnation cases defies application of any positive or exact rule or principle. Consequently, the trial court must be vested with a considerable degree of discretion in this regard. In the case at bar, we are impelled to find that the discretion was not properly exercised. The admission of this allegedly comparable sale of the Harrison Street property was necessarily detrimental and prejudicial to the rights of the owner. [We, therefore, find that the owner's first contention is well founded and that the trial court erred in submitting to the jury evidence of the sale of the property at 14-30 West Harrison Street.

██ The next contention pertains to allegedly undue restriction by the court of cross-examination of petitioner's experts. It has been a settled rule for generations that cross-examination of a witness should be confined to matters brought out on direct examination. Also, as a general matter, the precise scope of cross-examination rests within the discretion of the trial court. However, this discretion should not be applied in a narrow or restricted manner. This is particularly true with regard to the cross-examination of experts because they deal in opinions, as

opposed to facts, and their testimony is related to matters not within the common knowledge and experience of laymen. An excellent exposition of these matters is set forth in *Muscarello v. Peterson,* 20 Ill.2d 548 at pages 553 and 554. These principles, of course, apply with equal binding force to condemnation proceedings. (*City of Chicago v. Equitable Life Soc.,* 8 Ill.2d 341, 345.) It remains to examine the rulings of the trial court with these principles in mind.

■■■ On a number of occasions, the trial court sustained objections made by counsel for petitioner to questions stated by counsel for the owner on cross-examination. In one situation, an expert called by petitioner testified on direct that in arriving at his valuation opinion he considered the possibility of future environmental betterment in the area in question. The trial court expressly refused to permit the cross-examiner to determine the facts regarding such proposed betterment. The expert also testified on direct that he considered neighboring structures in arriving at his opinion. On cross-examination the trial court sustained objections concerning the Hartford Plaza building some four blocks from the subject property and sustained other objections relating to the Masonite building about the same distance removed. In these and other instances, the trial court repeatedly stated that cross-examination of the expert was to be limited to the scope of the direct. As we have seen, this was an erroneous interpretation of the applicable principles. Note *Muscarello v. Peterson,* 20 Ill.2d 548, 554.

■■ These undue restrictions on cross-examination, applied in the presence of the jury, served effectively to hamper presentation of the owner's side of the case. It is our opinion that these errors, combined with the above considered error in permitting proof of the sale of the Harrison Street property, deprived the owner of a fair trial. The basic principles applicable to a review of the judgment in this cause where the jury has viewed the premises and has fixed the compensation within the range of the varying expert opinions of value have been frequently stated. We quote from *Dept. of Public Works v. Drobnick,* 14 Ill.2d 28 at page 35:

"We have repeatedly held that where the evidence as to value is conflicting in a condemnation proceeding, and the jury, having viewed the premises, fixes the amount of compensation for land taken and of damages to land not taken within the range of the testimony, the award will not be disturbed unless there is something in the record which shows that the verdict was a clear and palpable mistake or the result of passion and prejudice, or unless there was some erroneous ruling which might have misled the jury." *Union Electric Power Co. v. Sauget,* 1 Ill.2d 125; *City of Chicago v. Harbecke,* 409 Ill. 425; *Forest*

*Preserve District v. Draper,* 387 Ill. 149; *City of Mount Olive v. Braje,* 366 Ill. 132.

The errors above pointed out demonstrate that the verdict was a clear and palpable mistake based upon erroneous rulings which misled the jury. We are convinced from this record that just compensation for the taking of this property was not fairly determined and that the cumulative effect of the trial errors, weighed in the light of the applicable legal principles, requires that a new trial be granted. See *Dept. of P. W. & Bldgs. v. Oberlaender,* 92 Ill.App.2d 174, 191.

Under this view of the case, we need not consider the additional contentions raised by petitioner. We accordingly direct that the judgment appealed from be reversed and that the cause be remanded to the Circuit Court of Cook County for further proceedings not inconsistent with the above opinion.

Reversed and cause remanded with directions.

BURKE and LYONS, JJ., concur.