KATHRYN ROSS, Ex'r of the Estate of Jesse E. Ross, Deceased, Plaintiff-Appellee, *v.* JAMES PFEIFER, Defendant-Appellant.

Fourth District   No. 13026

Opinion filed June 24, 1976.—Rehearing denied August 3, 1976.

TRAPP, P. J., dissenting.

Ackman, McKnelly, Marek and Boyd, of Watseka (Robert D. McKnelly, of counsel), for appellant.

Fellheimer, Fellheimer & Fitzpatrick, of Pontiac (William F. Fitzpatrick, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On February 9, 1973, Jesse E. Ross filed a complaint in the Circuit Court of Livingston County against defendant James Pfeifer seeking to recover for personal injuries alleged to have arisen out of a collision occurring on March 10, 1971. On March 5, 1974, Mr. Ross died of cancer not caused by the collision and his widow and executor, Kathryn Ross, was substituted as plaintiff. After jury trial judgment was entered on a verdict for plaintiff fixing damages in the sum of $30,000. Defendant appeals.

Plaintiff's deceased had been to a lodge meeting and at about 9:30 p.m. on the evening in question was driving alone in a northerly direction on U.S. Route 66 approaching the intersection with a rural road about 3 miles south of Odell in Livingston County. At this point Route 66 has two lanes of traffic going in each direction with a median strip in the center. At the intersection there was an east-west crossover which permitted crossing the highway and turning from the highway into the country road. A left turn at the rural road would have taken decedent to his home and at the time of the collision he was driving in the innermost or left turn lane. Defendant, accompanied by a friend, was returning from a basketball game at Normal and also driving in a northerly direction. His car was behind the Ross car and was in the outer lane. A third car was in front of defendant's car. Defendant pointed out to his passenger some matches that his passenger had dropped on the floor and then, without checking the passing lane, he drove into it and collided with the rear of the Ross car.

The decedent Mr. Ross did not indicate any injury at the scene but according to plaintiff, his wife, he was upset at home that night and went to see Dr. Homer L. Parkhill the next morning. X-rays were taken and deceased continued to see this same doctor once or twice per week until the doctor died on July 10, 1971. At that time Dr. Homer C. Parkhill, son of the deceased doctor, assumed the care and treatment. Consultation was had with Dr. John L. Wright, an orthopedic surgeon of Bloomington beginning in September of 1971. In the winter of 1972 deceased had the flu after which he continued to feel weak and tired and complained of aching in his lower chest. In May or June of 1972 Dr. Homer C. Parkhill determined that deceased had lung cancer in the form of bronchiogenic carcinoma. Mr. Ross underwent extensive treatment and surgery for the cancer. It was unsuccessful, however, and he died on March 5, 1974.

Defendant does not contest the sufficiency of the evidence to support a verdict but claims that various procedural errors occurred at the trial. His

most serious contention concerns the limitations placed upon his cross-examination by Drs. Parkhill and Wright. On direct examination both testified that there was no direct relationship between the decedent's symtoms of headache, dizziness, and limitation of movement of the neck and spasms of its muscles, and the cancer. Defense counsel was not permitted to question Dr. Parkhill on cross-examination as to the length of time that the cancer of the lung, a carcinoma, would have taken to develop or whether it was ever determined that the lung was the primary site of the cancer. Cross-examination of Dr. Wright as to his knowledge of where the hilum of the lung was located was also prohibited. This question was purportedly asked to test his knowledge.

Dr. Wright further testified on direct examination that when he examined decedent on November 10, 1972, decedent exhibited limitation of motion of the neck. Although the decedent had undergone cobalt radiation treatment and then surgery for the removal of the lung cancer within the 2 months prior to the examination, defendant was not permitted to cross-examine the doctor concerning the effect of the treatment on the body, whether the doctor knew of the type of cancer from which decedent suffered or whether the doctor was familiar with the term "bronchiogenic carcinoma." Defendant made offer of proof that if he were permitted to ask Dr. Wright, the doctor would testify that one of the symptoms of bronchiogenic carcinoma in the advanced stages is sometimes a generalized fatigue, that carcinoma metastasizes or spreads to other parts of the body, that if it did spread to the neck it possibly could cause loss of neck motion, and that the doctor did not know for sure the size or location of the cancer and had not consulted with the physician to whom Dr. Parkhill had referred decedent for the cobalt treatment and surgery.

In *Muscarello v. Peterson*, 20 Ill. 2d 548, 170 N.E.2d 564, a medical expert on direct examination answered a hypothetical question based on the evidence in the case as to causation between a blow to the head and a claimed state of ill-being by the recipient of the blow. In explaining his opinion, he stated that the encephalogram was not a reliable test for epilepsy. On cross-examination, opposing counsel was not permitted to ask the doctor if he had not, himself, examined the patient, withheld a diagnosis until he received the results of an encephalogram and then based his diagnosis on the encephalogram. The trial court ruled the question to be beyond the scope of the direct examination. On review, the Supreme Court held that the cross-examination should have been permitted and that its refusal together with other error was ground for reversal. The court noted that while large discretion is left to the trial judge in determining the limits of cross-examination, it should not be excluded on subjects covered in the direct examination and that great

latitude should be allowed in cross-examining a medical expert who answers a hypothetic question. The court concluded that prejudice resulted from the limitation on cross-examination.

The theory of the trial court in sustaining the objections to the proposed cross-examination in the instant case was twofold. One reason given was that the doctors had not testified about the cancer on direct and the inquiry was thus beyond the scope of the direct. The other reason, which was stated in ruling on some questions put to Dr. Wright, was that he had testified on direct examination that there was "no connection between the cancerous condition that developed and the accident." The issue upon which the defendant wished to cross-examine, however, was not whether there was a causal connection between the collision and the cancer but whether there was a causal connection between the cancer and decedent's symptoms which both doctors attributed to the collision. Both doctors had testified that there was no such causal connection and defendant should have been permitted to cross-examine them on this point. The questions to which objection was sustained should have been permitted.

■■ The error, however, was not of sufficient magnitude to require reversal. No direct evidence refuted the doctor's testimony that there was no connection between the symptoms attributable to the neck injury and the cancer or its treatment. Any inference from the testimony in the offer of proof that there was such connection or that the cancer had spread to the neck was highly speculative. Any prejudice to defendant was accordingly very small.

■■ Defendant also maintains that the trial court erred in overruling various objections to evidence offered by plaintiff. Some of these rulings concerned opinions of diagnosis and causation given by the doctors. Dr. Parkhill testified that after he assumed the care of decedent, he examined and questioned the patient. Dr. Parkhill was then permitted, over defendant's objection, to state that he diagnosed decedent's condition as a cervical sprain and then to explain how such an injury occurs when a sudden application of force is applied to muscle fibers. Similarly, over objection, Dr. Wright was permitted to give substantially the same testimony and to demonstrate the mechanics of the whiplash movement of the neck by use of a diagram. Dr. Wright was also permitted, over objection, to give an opinion in answer to a hypothetical tailored to the facts of the case, that the collision could have been the cause of the cervical sprain. Defendant's objection was that no evidence was introduced to show that decedent's neck was jerked at the time of the impact of the collision. Both doctors upon making diagnosis, however, had information that the decedent had been in a collision, that he had no symptoms before and that he had the described symptoms afterward. In

the hypothetical question, the substantial impact shown by the evidence of damage to decedent's car was an additional given fact. Neither logic nor precedent requires that a medical expert be given the exact bodily movements undergone by the injured party in order to express an opinion as to diagnosis or causation.

■■ Objections were also overruled as to testimony by plaintiff as to the card playing, camping, dancing and social activities engaged in by the couple prior to the collision and that prior to the collision, decedent had a "marvelous" relationship with his grandchildren. Generally it is prejudicial error to admit evidence of family circumstances in a compensation (as opposed to wrongful death) case. (*Payne v. Noles*, 5 Ill. App. 3d 433, 283 N.E.2d 329.) However, if such testimony is relevant or provides insight as to some element of compensable damages claimed, it is not error. (*Hedrich v. Borden Co.*, 100 Ill. App. 2d 237, 241 N.E.2d 546.) Here the testimony was supplemented with evidence that after the collision decedent's ability to engage in the activities with his wife was impaired and his mental attitude had changed so that his grandchildren annoyed him. Although the injury to the family unit was not compensable, the impairment of decedent's ability to engage in social and recreational activities and to enjoy the society of others was compensable.

Two items of plaintiff's evidence admitted over defendant's objection concerned problems which arose because the senior Dr. Parkhill who had treated plaintiff's deceased for the first few months, had died. His son, Dr. Homer C. Parkhill, testified from office records that the senior Dr. Parkhill had seen decedent professionally approximately 34 times after the collision. A bill purporting to be from Homer C. Parkhill, M.D., for professional services "rendered for neck injury from 3/11/71 through Oct. '73" in the sum of $409.50 was admitted into evidence. Dr. Parkhill testified that this bill had been prepared by his staff from his records and that of his father. Defendant argues that to the extent that these items of evidence reflect the records of the senior Dr. Parkhill, the information conveyed is hearsay that is not made admissible by the business records exception of Supreme Court Rule 236 (Ill. Rev. Stat. 1973, ch. 110A, par. 236). That rule states that it "does not apply to the introduction into evidence of medical records."

■■ In *People v. Jackson*, 41 Ill. 2d 102, 107, 242 N.E.2d 160, 163, a jail inmate's condition at the time of making a confession was at issue. A jail admission card kept by the jailor which contained a notation by an examining physician that the inmate's "condition" was "good" was held to be properly admitted. The court reasoned that although the statement in issue was a doctor's diagnosis, the card was more than a diagnostic record and thus admissible under Rule 236. In *People v. Aristole*, 131 Ill. App. 2d 175, 268 N.E.2d 227, information on a hospital record concerning

defendant's physical condition which bore on his alibi was held to be properly refused as the record was merely a diagnostic record. Here the records of the Parkhills were diagnostic in that there must have been some reference in the documents as to the nature of the condition for which decedent was being treated. In addition, however, they were financial records and that was the purpose for which the information from them was being introduced. No error occurred in admitting this evidence. Even had there been error, it would have been minimal because plaintiff testified that deceased visited the senior Dr. Parkhill about his neck frequently during this period and any error in the number of visits made would effect only a small portion of the $409.50 bill rendered for the combined services of the two Parkhills extending over 2½ years.

■■  A photograph of deceased taken some 2 years prior to the date of the collision was admitted over defendant's objection for the stated purpose of "acquainting the jury with Mr. Ross' features." The admission was improper. In a wrongful death case the admission of a picture of the decedent is permissible to show his state of well-being prior to his death. In this case, to the extent that the picture showed the decedent's state of well-being before the collision, the picture had some probative value. The prejudice was minor. The error was not reversible.

■■  Plaintiff called the defendant for cross-examination under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60). He testified that at the time of the collision he did not see any turn signals operating on the Ross car. Later, an agent for Mr. Ross' insurance carrier testified that after the collision he had talked with defendant and defendant had told him twice that Mr. Ross' turn signals were on at the time of the collision. The agent further testified that the interview was spoken into a tape recorder; the tape was subsequently transcribed by an unnamed secretary; the tape then destroyed; the original transcript microfilmed; the transcript then destroyed and the microfilm was then photocopied. The agent testified that the photocopy contained all of the conversation concerning the occurrence. Plaintiff offered the exhibit in evidence, stating a willingness to obliterate any part of the document except the 2 admissions. Over defendant's objection, the exhibit was admitted. The offer to cover part of the document was refused. Defendant argues that the foundation for the exhibit was insufficient. No Illinois cases in point are cited. The Federal Rules of Evidence, Rule 901, 28 U.S.C.A., states, in part:

"(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of

limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

\* \* \*

(9) Process or system. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result."

Since the witness testified that the result of the process used here was accurate, that rule would permit the admission of a document so authenticated. In any event, the evidence was merely cumulative. Any error would not have been reversible.

■■ The cumulative nature of this and other evidence admitted over defendant's objection is the basis of his last argument on the admissibility of evidence. He contends that an undue amount of cumulative evidence was admitted. Defendant's discovery deposition was read to the jury. Contrary to defendant's argument, however, his testimony in the deposition contained material discrepancies with his testimony at trial. While being examined under section 60, defendant stated that after the collision he received traffic tickets for the offenses of driving too fast for conditions and failure to stop to avoid an accident. He then stated that, in order to avoid the inconvenience of missing school to go to court, he mailed a written plea of guilty and payment of a $15 fine to the circuit clerk. Defendant objected that the subsequent testimony of the clerk laying a foundation for the traffic ticket, written guilty plea and waiver of rights signed by defendant was also cumulative. Since defendant had contended that he pled guilty to avoid inconvenience, this evidence had some probative value to show that defendant entered the plea despite various admonitions in the documents that defendant had a right to trial and that conviction would be reported to the Secretary of State. The introduction of cumulative evidence is largely a matter of discretion vested in the trial court. (*Woodrick v. Smith Gas Service, Inc.*, 87 Ill. App. 2d 88, 230 N.E.2d 508.) No abuse of that discretion occurred here.

■■ Defendant cites error in the ruling on three instructions. Over his objection, IPI Civil 2.13 was given at plaintiff's request. That instruction advises the jury that they should give no consideration to whether a party is insured. The IPI notes on the use of the instruction state that it "should only be given at the request of the party whose insurance coverage has been disclosed." The IPI comment to the instruction states that when the existence of insurance is properly before the jury, "they may be informed that the element of insurance has no bearing on the issues." Here plaintiff's insurance was properly disclosed and he requested the instruction. No error occurred.

■■ Defendant tendered and the court refused two instructions drawn to the form of IPI Civil 60.01 dealing with the jury's consideration of

statutory traffic violations as bearing on the question of contributory negligence. The instructions concerned section 11—1301 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11—1301) (stopping a vehicle on a roadway when practicable to do so off the roadway) and section 11—1303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11—1303) (stopping a vehicle within an intersection). There is some evidence that the plaintiff's car was stopped at the time of the collision but there is no evidence that this occurred at the intersection or if it was practicable to stop it elsewhere. The refusal of these instructions was not error either.

■■ Lastly, defendant maintains that the trial judge erred in comments he made to the jury. When the court admitted the photostat of the transcript of the interview between the insurance adjuster and defendant, it stated that it was admitting the exhibit to show that "Defendant admitted on 2 occasions that he saw the turn signal on the Ross vehicle on for a left hand turn." When defendant was attempting to cross-examine Dr. Wright as to cancer, in sustaining an objection, the court stated:

> "The witness has testified there was no connection between the cancerous condition that developed and the accident that occurred. Now, I don't know what further definitive statements you need to prove to the Jury that this is in no way connected with the accident. I think we have as clear a statement as any doctor could come up with in that regard."

The first comment was an explanation of the purpose for which the evidence was being admitted and did not exceed the reasonable latitude granted the judge in doing so. (*Northern Illinois Gas Co. v. Wienrank*, 66 Ill. App. 2d 60, 213 N.E.2d 411.) The second comment concerned the judge's opinion of the evidence as to the relation between the cancer and the collision. Such comments are usually improper. (*Hickey v. Chicago Transit Authority*, 52 Ill. App. 2d 132, 201 N.E.2d 742.) As we have indicated, we consider that the trial judge here confused the question of whether the collision caused the cancer with the question of whether the cancer and its treatment caused any of the symptoms attributed by plaintiff's witnesses to the collision. The statement of the court concerns the causal connection between the collision and the cancer, a point upon which the parties agree that there was no issue. Defendant, therefore, was not prejudiced.

There was also no error in the court's hearing some arguments at side bar, in the presence of the jury but out of their hearing or in limiting the time of defendant's cross-examination of Dr. Wright.

■■■ Many questions arose during the course of the trial. As we have indicated, we find some error to have occurred. The evidence is very

strong as to the defendant's liability and that the decedent received the injuries claimed. We do not think that the limitation upon the cross-examination of the doctors, the showing to the jury of decedent's picture or the judge's comment on the proof that the collision did not cause the cancer in any way effected the jury's determination of liability or the amount of the verdict. Nor did the admission of Dr. Parkhill's bill or the photostat of the transcript of defendant's conversation with the insurance adjuster have such prejudicial effect, if the admission of this evidence was improper. The errors neither singly nor in totality constitute grounds for reversal. We affirm.

Affirmed.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:
The principal opinion examines an accumulation of error on evidentiary rulings, but concludes that such were not prejudicial. In the light of the complex circumstances of this case, and the long period of concurrent disability unrelated to the collision, I cannot agree.

Within some ten months of the collision decedent was the victim of severe influenza and associated infections. Symptoms thereafter persisted leading to almost immediate diagnosis of lung cancer. Three months thereafter he underwent cancer surgery and the radiation therapy incident thereto and, in fact died from such conditions about three years later.

The trial court concluded that since the collision did not induce the cancer defendant should not be permitted to cross-examine the plaintiff's physician concerning the effect of the cancer surgery and the ensuing therapy upon decedent's state of well-being, activities and general condition thereafter. The principal opinion remarks that there was no independent proof of such factors tendered, but disregards the act of a denial of offer of proof as to matters to which the examining physicians could testify.

It appears that Dr. Wright did not examine the decedent concerning the injuries alleged to be received from the collision until the surgery and radiation therapy, but defendant was not permitted to inquire concerning the effect of such upon symptoms found at the examination. The discretion of the trial court as to limitations upon cross-examination should not be applied in a restrictive manner as to experts who speak of opinions concerning matters not within the knowledge and experience of laymen. *Muscarello v. Peterson*, 20 Ill. 2d 548, 170 N.E.2d 564; *City of Chicago v. Avenue State Bank*, 4 Ill. App. 3d 235, 281 N.E.2d 66; *Horwitz v. Michael Reese Hospital*, 5 Ill. App. 3d 508, 284 N.E.2d 4.

The plaintiff decedent was free from the impact of the cancer surgery and its sequelae for less than one-fourth of the period considered by the jury. Where the proper elements of compensable damage are so commingled between the proximate result of the injuries and the development of the cancer and its attendant treatment, it appears that the court's ruling forestalled any isolation of the symptoms of the original injury from the effect of the cancer. I would hold that the error in limiting defendant's cross-examination of the physicians, together with the other errors in evidentiary rulings found by the opinion, were so prejudicial as to require reversal of the judgment and remandment for a new trial upon the issues of damages.