# People of the State of Illinois, Plaintiff-Appellee, v. Clarence Wallace, Defendant-Appellant.

## Gen. No. 53,525.

First District, Fourth Division.

December 10, 1969.

---

* See Callaghan's Illinois Digest, same topic and section number.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Robert Kelty, Special Assistant State's Attorney, and Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

Defendant was charged with attempt to murder, unlawful use of a weapon, and knowingly carrying concealed on his person a pistol within five years of his release from a penitentiary. After a nonjury trial, he was found guilty of attempt to murder. The court sentenced defendant to serve eight to twenty years.

Defendant appeals. His brief presented two issues for review: (a) whether the trial court correctly accepted defendant's waiver of trial by jury; and (b) whether the sentence, if it is valid, is too severe and should be reduced. During oral argument, defendant's counsel conceded that recent decisions of this court made the jury waiver contention untenable. Accordingly, counsel asked and we allowed withdrawal of this point. Therefore, the sole issue in this appeal is whether the sentence is too severe.*

---

\* Defendant, acting pro se, filed a motion praying for entry of an order directing his counsel to amend his brief, or in the alternative, that we rule on the contentions he lists in his motion so that the doctrine of waiver will not apply to any post-convic-

On February 16, 1968, at about 2:00 p. m., William Callaghan, a Chicago policeman, in uniform and in a squad car, was driving north on Normal Boulevard. Near West 60th Street, Callaghan saw a green 1963 Chevrolet driving east with two occupants, one a driver and the other a front seat passenger, whose youthful appearance attracted his attention. He decided to curb the vehicle. Using his blue flasher, Callaghan stopped the Chevrolet approximately four feet in front of his squad car, at or near 315 West 60th Street.

As Callaghan left his vehicle, he saw defendant, the driver of the Chevrolet, get out. He heard the occupant say to the driver, "Be cool, man. Be cool." The driver replied, "No. We can't take a chance." Callaghan then saw that defendant had a gun. Callaghan ran to the other side of the street, keeping defendant in his view, and took refuge behind a tree. Defendant drew his gun and fired at Callaghan. Callaghan returned the fire. Defendant fired four or five shots; Callaghan, six. After the gunfire, defendant and the occupant ran into the building at 315 West 60th Street. A short time later, defendant came out and ran behind the building into an alley. As he did, he stopped and fired one more shot at Callaghan. The car in which defendant was riding was later taken to a police auto pound.

Four days later, on February 20, Callaghan in the company of two fellow policemen, went to a pool hall. There he saw defendant. Callaghan approached him, told him he was under arrest. When he asked why, he was told he was under arrest for attempting to shoot Callaghan. Defendant resisted the arrest, causing Callaghan to break a hand. Defendant was subdued and taken into custody. He was charged and brought to trial.

tion remedy he may seek. We allowed defendant's motion to stand as an additional brief. We have considered each additional contention and find them without merit.

To support its allegations under counts I and II of the indictment, the State called Callaghan and a fellow officer. For the defense, defendant and his brother testified. To support its allegations under count III, the State called an assistant record clerk at Stateville branch of the penitentiary in Joliet. He testified that defendant was received at Stateville on May 16, 1961, to begin a five to ten year sentence for unlawful possession of narcotics. He was paroled on March 1, 1965. On December 24, 1965, he was returned a parole violator. On November 10, 1966, defendant again was released on parole and again returned a violator on May 9, 1967. Then, on completion of his sentence, defendant was released from the penitentiary on January 15, 1968.

After hearing witnesses and arguments of counsel, the trial judge reviewed the evidence and then found defendant guilty of attempt to murder Callaghan. Hearing in aggravation and mitigation followed. The prosecution showed that in December 1956, defendant was sentenced to serve three months for petty larceny. In October 1957, defendant was sentenced to serve three months for assault with a deadly weapon. In February 1961, defendant was sentenced to serve five to ten years for unlawful possession of narcotics. The trial judge heard counsel on the question of punishment. Defendant's counsel spoke, calling attention to the views of modern penology on the relation between long sentences and rehabilitation. After listening to counsel, the court sentenced defendant to serve a term of eight to twenty years.

Defendant contends this sentence is too severe. He argues that this case is a proper one for exercise of the power we have to reduce sentences given us by Supreme Court Rule 615(b)(4), Ill Rev Stats 1967, c 110A, § 615 (b)(4). The State, on the other hand, argues that the sentence imposed was proper because of the heinousness of the crime of which defendant was convicted, and be-

cause a long criminal record indicated defendant was a hardened criminal.

 People v. Ramey, 115 Ill App2d 431, 253 NE2d 688, is a recent occasion when we passed on the contention defendant makes before us. We said then that reviewing court power to reduce a sentence should be exercised with caution and circumspection. The primary purpose of our authority to reduce a sentence is to prevent arbitrary or oppressive treatment of offenders and to provide penalties which are both proportionate to the circumstances of the case, and which recognize differences in rehabilitation potential of offenders. When a sentence is imposed within the limits prescribed by statute, we will not disturb it on review unless it is a departure from fundamental law, its spirit and purpose; or, the punishment is manifestly in excess of the provisions of section 11 of Article II of the Illinois Constitution requiring that all penalties be proportioned to the nature of the offense. The doctrines we applied in Ramey were supported by a long line of Illinois cases.

 In People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503, it was contended, as does the defendant here, that the sentence imposed was too severe for the nature of the crime. We said that "[T]he court, in fixing punishment, should weigh and consider all pertinent matters, including the nature of the offense, the attending circumstances, the character and propensities of the offender, and the chances of his reform." 56 Ill App2d 93, at 98. When defendant's argument for modification of sentence is scrutinized with these principles in mind, the conclusion we reach is that his case is not persuasive.

 Defendant precipitated an attack on a uniformed policeman as he alighted from a squad car. The episode endangered a densely populated section in the City of Chicago. To use a contemporary colloquialism, defendant started a shoot-out. The fact that no one was in-

jured does not detract from the heinousness of the offense. When all pertinent matters are considered, defendant does not present a case that will justify exercise of our power to modify the sentence imposed by the trial court. People v. Brown, 60 Ill App2d 447, 208 NE2d 629; People v. Garrison, 108 Ill App2d 77, 246 NE2d 465.

Judgment affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.