**People of the State of Illinois, Plaintiff-Appellee, v. Earl L. Harkey, Defendant-Appellant.**

**Gen. No. 54,592.**

First District, Fourth Division.

April 8, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Suzanne M. Kohut, James N. Gramenos, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph Romano, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant was found guilty by a jury of the crimes of robbery (July 26, 1968) and armed robbery (July 18, 1968) and was sentenced to a term of ten to fifteen years on each charge, the sentences to run concurrently. Defendant appealed directly to the Supreme Court which found that it had no jurisdiction on direct appeal and transferred the case to this court.

Defendant raises three points on appeal: (1) the prospective threat of testimonial impeachment for a prior conviction denied him due process and equal protection of the law; (2) the impeachment by nonstatement of a defense witness at the preliminary hearing was improper; and (3) the prosecution's improper and prejudicial closing argument deprived him of a fair trial, and in the absence of such prejudice he would not have been proved guilty beyond a reasonable doubt.

On July 18, 1968, the defendant entered Morrow's Nut Shop, located at 36 West Washington Street, Chicago, Illinois, at 8:35 p. m. He ordered Mary Williams, a sales-

girl, to put the money from the cash register into a paper bag. He had a gun during the robbery. She saw the gun handle and barrel. The defendant escaped with $90. She described the defendant as thirty-six to forty years old, five feet, seven inches tall, 140 pounds in weight, with large eyes and a moustache. He was carrying a shopping bag. He wore no glasses. He had on a checkered shirt and dark pants. She only saw him for a short time.

On July 26, 1968, the defendant again entered the store at 8:35 p. m. Miss Williams was the salesgirl. The defendant threatened her and told her to put the cash register money in a paper bag. He told her to walk to the back of the store while he escaped with $70. She described the defendant as wearing a blue sweater and brown pants. He was carrying a paper shopping bag during the robbery. She thought the defendant was younger, about twenty-seven years old, 175 pounds and five feet, nine inches tall. She had a real good look at him for approximately five minutes.

On July 29, 1968, the defendant came into the store and asked for Miss Williams. She did not answer him. When the manager called out the maintenance man's name, the defendant walked out of the store. The police were called and Miss Williams told them that the man was the same one who had robbed the store twice before.

The defendant once again entered the store on August 8, 1968. Miss Williams walked slowly to the back door and asked an employee next door to call the police. Defendant left the store when he saw the police coming. He was arrested approximately one block from the store. He was carrying a shopping bag at the time of his arrest.

Miss Williams identified the defendant in court as the man who twice robbed the store.

The arresting police officers testified as to the apprehension and capture of the defendant.

Mrs. Lennie Zuehlke, store manager for the Morrow Nut Shop, testified that the defendant was the same man who entered the store on July 29. She described him as thin and tall, Negro, five feet seven inches, 160 pounds, with pockmarks or blemishes on his face. He looked as if he needed a shave. He was carrying a brown paper bag and a dollar bill when he entered the store.

Minnie Yelder, the defendant's mother and the only witness for the defense, testified that her son is near-sighted and that he must continually wear glasses. On July 18 her son and she watched the White Sox ball game during the evening hours and then went to bed. Her son had come home from work at General Felt by 8:30 p. m.

Elmer Pendarvis, personnel manager at General Felt, testified that the defendant worked at General Felt for one day only. He started on Thursday night, July 11, at 11:00 o'clock in the evening and worked until 7:00 a. m. Friday morning.

Don Unferth, Regional Director and Club Statistician for the White Sox, testified that the Sox played an after-noon game on July 18 which ended at 3:28 p. m. The Sox did not play a night game on July 18.

Gordon Fullmore, a court reporter, testified that the transcript of defendant's preliminary hearing showed that the defendant's mother, Mrs. Yelder, never made any statement during the hearing that her son was home on July 18 and July 26.

Defendant contends that the prospective threat of im-peachment for his prior conviction denied him due process and equal protection of the law. The defendant's prior provable conviction was for burglary. Defendant's coun-sel moved the court not to allow the State to introduce the prior conviction into evidence so that defendant could be free to testify in his own behalf. Counsel stated that defendant's prior conviction had no bearing on the instant case. The State objected to the motion. The court de-

nied the motion and thereafter defendant did not testify. Defendant claims that the court abused its discretion by denying his motion to testify without being subjected to impeachment by his prior conviction. He cites Luck v. United States, 348 F2d 763 (DC Cir 1965) in support of this contention. In Luck the court found that the word "may" in its impeachment statute [1] gave the trial court the discretion of whether or not to admit evidence of prior convictions. (See 14 DC Code § 305 (1961).) However, our court, in the recent case of People v. Gilmore, 118 Ill App2d 100, 254 NE2d 590, rejected the Luck doctrine. In Gilmore we held that:

> Since the presentation of evidence to show an interest or prior conviction is the responsibility of the parties and not of the court, we too hold [2] that "may" does not grant discretion to the court to receive or reject the proof of a prior conviction. When properly presented it is mandatory that the court receive evidence of defendant's prior conviction.

■ Therefore, in view of our holding in Gilmore, we find that the trial court properly denied defendant's motion.

■■ Defendant also contends that the impeachment by a nonstatement of a defense witness at the preliminary hearing was improper. After carefully reviewing the trial record we believe that the defendant misinter-

[1] Similar to the Illinois statute which reads:
No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility: (Ill Rev Stats 1965, c 38, § 155–1.)

[2] See State v. Hawthorne, 49 NJ 130, 228 A2d 682.

preted the evidence. At trial defendant's mother was specifically asked if she made the statement during the preliminary hearing that her son did not commit the robberies because he was at home with her. Defendant's mother answered that she had made such a statement. However, on rebuttal the court reporter at the preliminary hearing testified that the transcript contained no statement by the mother that defendant was at home with her on July 18 and July 26. We find no error in the admission of the court reporter's testimony. Defendant's argument that the defendant should have been represented by counsel at the preliminary hearing is answered adversely by People v. Bonner, 37 Ill2d 553, 229 NE2d 527.

■ ■ Defendant also argues that the prosecution made an improper and prejudicial closing argument (describing defendant as a "leech," etc.) which deprived him of a fair trial and that in the absence of such prejudice his guilt would not have been proved beyond a reasonable doubt. Improper remarks of counsel during closing argument do not constitute reversible error unless they result in substantial prejudice to the accused. People v. Nilsson, 44 Ill2d 244, 255 NE2d 432; People v. Stahl, 26 Ill2d 403, 186 NE2d 349; and People v. Swets, 24 Ill2d 418, 182 NE2d 150. Considered in the light of the evidence of guilt presented by the prosecution, it cannot be said that the remarks of the prosecution, referred to by the defendant, represented a material factor in his conviction and that the verdict would have been different had the comments not been made. People v. Nicholls, 42 Ill2d 91, 245 NE2d 771, and People v. Armstrong, 41 Ill2d 390, 243 NE2d 825. We find that the prosecutor's remarks did not result in substantial prejudice to the defendant and that he received a fair

trial in which his guilt was established beyond a reasonable doubt.

The judgment is affirmed.

Affirmed.

ENGLISH and LEIGHTON, JJ., concur.