THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DEMATRIS ARISTOLE, Defendant-Appellant.

(No. 53677;

First District—January 22, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged by indictment with the crime of arson in violation of Section 20—1 of the Criminal Code. (Ill. Rev. Stat. 1967, ch. 38, par. 20—1.) In a jury trial he was found guilty and was sentenced to a term of 8 to 24 years.

On appeal defendant argues:

1. the indictment was legally insufficient to support the conviction;
2. certain medical records were erroneously excluded from evidence;

3. defendant was denied a fair trial by admission of evidence of a previous robbery conviction;

4. the court erred in failing to conduct a hearing to determine defendant's competency to stand trial;

5. the State failed to prove the requisite mental state of defendant. at the time of the fact charged; and

6. the sentence was excessive.

The State presented two eye-witnesses, Ben Van Ella and Jack King. Van Ella testified that on April 6, 1968, he was employed as a security guard, patrolling with his dog the street between 1100 and 1200 N. La Salle Street. At approximately 11:20 P.M. he was standing in front of 1152 N. La Salle talking with Jack King. He saw a man at 1120 N. La Salle making a throwing motion and heard the sound of glass breaking and an explosion. He began to run toward the man and the man ran a few steps toward him and fell, then got up and ran in the opposite direction. At that time a police car drove up and an officer jumped from the car and apprehended defendant. The witness then entered the building. The first-floor apartment was in flames.

Jack King's testimony corroborated that of Van Ella. He was talking with Van Ella when he saw defendant throw a lighted object through the first floor window at 1120 N. La Salle. He heard an explosion and saw flames coming from the window. He ran with Van Ella toward defendant who first ran toward them, fell and then began to run away at which time he was captured by the police. He stated that defendant smelled of gasoline.

Chicago Police Officers Thomas Wilczenski and Thomas McNelley testified for the State. Both stated that on April 6, 1968, at about 11:00 P.M. they were patrolling near 1100 N. La Salle Street in a police car when they heard breaking glass. They saw two men running south and then observed defendant who ran a few steps north, stumbled, and then proceeded south. Officer McNelley jumped from the police car and grabbed defendant. Defendant smelled of a "petroleum product similar to gasoline." Defendant was placed in custody and Officer Wilczenski attempted to help extinguish the fire. Wilczenski stated that in his opinion defendant was not intoxicated when arrested.

John Brown testified for the State. He was one of about twelve persons who lived in the building at 1120 N. La Salle on April 6, 1968. He was in his sectiond-floor apartment at about 11:00 P.M. that night when he heard an explosion and found smoke in the hall of the building. He was unable to go downstairs due to smoke but reached the roof by way of a fire escape.

Nick Romaniszak testified for the State. He was employed by the

Bureau of Fire Investigation of the Chicago Fire Department. At about 12:30 A.M. on April 7, 1968, he investigated a fire at 1120 N. La Salle. His investigation indicated that the fire began three to five feet from the front windows of a first floor apartment and was caused by an accelerant. An accelerant is a highly flammable liquid similar to gasoline, kerosene or turpentine. He noticed a strong odor of a petroleum based liquid such as gasoline.

Defendant testified in his own behalf. On the morning of April 6, 1968, he went to work as usual. Before going to work he had his usual drink of one pint of wine and one half pint of vodka. He had had this amount to drink each morning before work since the preceding December. He walked from his residence at 717 North Clark to the University Inn at Harrison and Wood Streets where he began work at 9:30 A.M. He worked until 8:00 P.M. and had nothing to drink while working. After leaving work he bought three pints of wine and one half pint of vodka. As he walked home he drank two pints of wine and half of the half pint of vodka. He remembered sleeping for a time in an alley on his way home. His recollection was that he went to work as usual on the 7th of April and as far as he could remember he also went to work on the 8th, 9th and 10th. The first recollection he had of being arrested was awakening strapped to a bed in Bridewell Hospital on April 14th.

Dr. Sheldon Slodki, associate director of the hospital at Bridewell House of Correction, also testified for the defense. He stated that according to the hospital records defendant was admitted to the Bridewell hospital for treatment of delirium tremens on April 7, 1968. He also testified that a person suffering delirium tremens must be a "binge drinker," that is, someone who consumes virtually nothing but alcoholic beverages for a period of a week to a month or more. A person suffering a delirium tremens withdrawal reaction would have to have been drinking for a considerable period of time. The witness was not allowed to testify to any information contained in defendant's hospital record nor to any facts of the treatment received by defendant.

Defendant's first contention on appeal is that the indictment was so lacking in specificity as to render it insufficient at law. The indictment stated as follows:

"On April 6th, 1968 at and within said county (Cook), Dematris Aristole committed the offense of arson, in that he, by means of fire, knowingly damaged the building held in Trust No. 12401, of The Exchange National Bank, the damage to said building being in excess of one hundred fifty dollars, without having the consent of said Trust No. 12401, of The Exchange National Bank, in violation of Chapter 38, Section 20—1 of the Illinois Revised Statutes 1967, * * *.

Section 20—1 of the Criminal Code provides:

Par. 20—1. Arson.) A person commits arson when, by means of fire or explosive, he knowingly:

(a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent; * * *.

Property 'of another' means a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property.

The Criminal Code defines 'person' as follows:

Par. 2—15. 'Person'.) 'Person' means an individual, public or private corporation, government, partnership or unincorporated association. Ill. Rev. Stat. 1967, ch. 38, par. 2—15."

Defendant's first contention regarding the indictment is premised on the fact that "trust" is not included within the statutory definition of "person." The argument is that because the indictment states that the property was held in a trust it fails to meet the statutory requirement of stating that the property burned was the property "of another." We do not find defendant's argument persuasive.

■■ Whether a trust is a person or not is beside the point. The indictment does name the trustee, Exchange National Bank, which is certainly a "person" within the statutory definition. This is clear identification of an ownership of property "in which a person other than the offender has an interest which the offender has no authority to defeat or impair."

Defendant also argues that the ownership indicated by the indictment was so vague as to make it impossible to determine which property was the subject matter of that ownership. The Court's attention is directed to *People v. Patrick*, 38 Ill.2d 255 at 257 where the Supreme Court stated:

"Section 9 of Article II of the Illinois Constitution declares that an accused in a criminal prosecution has the right 'to demand the nature and cause of the accusation and to have a copy thereof.' This constitutional right is aimed at assuring 'that before a defendant can be put on trial there be a formal written accusation setting forth the crime with clearness and all necessary certainty to apprise the defendant of the crime with which he stands charged in order that he may intelligently prepare his defense and plead the judgment in bar of a subsequent prosecution for the same offense.'"

See also *People v. Petropoulos*, 59 Ill.App.2d 298; affirmed, 34 Ill.2d 179.

■■ We believe that proper remedy was available to the defendant by way of a motion for a bill of particulars. The Supreme Court has repeatedly said that an indictment which fails to specify the street address

at which an offense has allegedly occurred is not for that reason fatally defective though it may require the granting of a motion for a bill of particulars in those cases where a defendant reasonably needs such additional information to properly prepare his defense. *People v. Blanchett,* 33 Ill.2d 527; *People v. Reed,* 33 Ill.2d 535; and *People v. Patrick,* 38 Ill.2d 255.

Defendant's second argument on appeal is that error was committed by the court in refusing to admit into evidence the medical records of defendant's treatment in the Bridewell hospital following his arrest on April 6, 1968. Dr. Sheldon Slodki was subpoenaed by the defense and testified that he was the associate director of the Bridewell hospital and that he supervised treatment of inmates in the hospital. He stated that he had not personally conducted examination or treatment of the defendant but that records indicating such facts about each patient are kept by the hospital in the regular course of business. The State's objection to his testimony concerning the defendant's condition and treatment was sustained.

The defendant argues that the medical records exception to the Business Records Rule (Ill. Rev. Stat. 1967, ch. 110A, par. 236) does not apply here. Rule 236 is as follows:

(a) "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was in the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter * * *.

(b) This rule does not apply to the introduction into evidence of medical records or police accident reports."

In support of his contention defendant cites *People v. Jackson* (1968), 41 Ill.2d 102, 114. In that case the Supreme Court approved admission into evidence of a prisoner's inmate card. The card

"included in addition to the medical notation describing defendant's condition as good, certain other data relating to defendant's history, his picture, his fingerprints and the reason for his admission. It is also evident that this 'card' is kept pursuant to long standing practice and the statutory requirement that the warden keep an exact calendar of persons committed to jail, their place of abode, the time, cause and authority of their commitment, and 'a description of the person,' and the time and manner of discharge. Ill. Rev. Stat. 1967, ch. 75, par. 7."

■3  The instant case is clearly distinguishable from *Jackson*. In *Jackson* the Supreme Court said that the "inmate history card was * * * con-

siderably more than the diagnostic medical record intended to be ex-cluded without doctor identification by the Supreme Court rule." Here it is precisely the diagnostic medical record which defendant sought to place in evidence. We believe that the records here in issue are within the medical records exception to Rule 236 and were therefore properly refused admission by the trial court.

■4  Defendant next argues that admission of evidence of a 1949 rob-bery conviction was prejudicial and denied him a fair trial. Defendant testified in his own behalf. On rebuttal the State introduced the previous conviction for the purpose of impeaching his credibility. It is argued that the conviction was so remote in time and so unrelated to his veracity that the only practical function served by its admission was to prejudice defendant in the eyes of the jury. Under Chapter 38, Section 155—1, Illinois Revised Statutes, 1967, evidence of prior convictions of an ac-cused is properly admissible for purposes of impeachment where that accused has voluntarily testified on his own behalf.

This court has recently considered defendant's argument in *People v. Gilmore* (1969), 118 Ill.App.2d 100 and *People v. Harkey* (1970), 123 Ill.App.2d 256. We find here, as in *Gilmore* no error in the admission of defendant's conviction as impeachment evidence.

■5  Defendant's fourth argument is that the trial court erred in failing to conduct a hearing to determine defendant's competency to stand trial. The only evidence offered by the defense which might have suggested defendant's inability to stand trial was testimony of the two defense witnesses that he had been treated in the Bridewell hospital between April 6 and April 14, 1968. This was some five months prior to his trial which began on October 2, 1968. There is no indication in the record that defendant was unable to understand the nature and purpose of the pro-ceedings against him or unable to assist his counsel in his defense. His testimony is coherent and responsive to the questions put to him. The record does not reflect feeling on part of his counsel or the court that defendant was unable to participate in his own defense. We believe that the evidence of previous chronic alcoholism was not, of itself, sufficient to raise a *bona fide* doubt of current competence. (See *People v. Bort-nyak*, 39 Ill.2d 545.) We find no error in the court's not having conducted a competency hearing.

■6  Defendant's fifth contention is that defendant was not proved guilty beyond a reasonable doubt in that the requisite mental state of defendant at the time of the act was not proved. Defendant contends that his testi-mony concerning his alcoholic consumption on the date of the incident and Dr. Slodki's testimony relating to his subsequent treatment raised a doubt as to his having "knowingly" committed the act as required by the

statute under which he was charged. We believe that the essential issue here involved was the jury's evaluation of the evidence and its determinations as to the credibility of the witnesses. Officer Wilczenski testified that defendant was not intoxicated when arrested. There was testimony to the effect that defendant attempted to run from Van Ella and King after throwing the object through the window. From this and other evidence the jury could reasonably have concluded that defendant's acts were knowingly performed. We believe that defendant was proved guilty beyond a reasonable doubt.

■■ Defendant's final contention is that his sentence was excessive. This court is urged to reduce his sentence under the provisions of Supreme Court Rule 615. (Ill. Rev. Stat. 1969, ch. 110A, par. 615.) Particular attention is directed to the trial court's remarks suggesting that the arson here involved could have led to the death of the building's seven occupants. We believe that the fact that the subject building was a residence occupied by several persons was not an inappropriate factor for the court's consideration in fixing sentence. Among the considerations to be taken into account by the reviewing court are that the trial court is in a superior position to determine the appropriate sentence, that a reduction should not be granted out of judicial clemency, that the power is to be exercised primarily to prevent arbitrary or oppressive sentencing, *to provide penalties proportionate to the crime* and to reflect the varying rehabilitation potentials of the defendant. (See *People v. Taylor,* 33 Ill.2d 417, 424; and *People v. Wallace,* 117 Ill.App.2d 426, 429—431.) Consideration of these factors in the instant case persuades us that this is not an appropriate case for this court to exercise its power to reduce the sentence.

The judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and DRUCKER, J., concur.