THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR JONES, Defendant-Appellant.

Third District   No. 78-494

Opinion filed August 31, 1979.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On May 25, 1977, defendant Arthur Jones was indicted by the Peoria County grand jury on two counts of unlawful delivery of a controlled substance, one involving cocaine and the other involving lysergic acid diethylamide (LSD). On April 17, 1978, defendant pleaded guilty to both charges, and following a sentencing hearing, he was sentenced to a term of 3 to 10 years imprisonment for the delivery-of-cocaine conviction and to a term of 2 to 6 years imprisonment for delivery of LSD, with the two sentences to run concurrently. The only issue on appeal is whether the sentences were excessive.

The presentence report indicated that defendant, who is 36 years old; had enlisted in the United States Army in 1959 and was honorably

discharged in 1964. While in the army, defendant completed his G.E.D. and took a few college extension courses. During his army tour, defendant was married to a Korean National and has been married three times since. His current wife, Debra Killen Jones, is 22 years old and is very supportive of her husband.

Defendant was employed in the Springfield, Illinois, area, from 1967 to 1974, and then he established his own business in September, 1974. However, his heating-and-air-conditioning business went bankrupt two years later, and defendant then purchased the rights to be a territory owner and operator for a barber and beauty supply company. This venture also failed, apparently as a result of defendant's incarceration for the present offense. After his release from jail in July 1977, defendant was employed as a maintenance man at the Harvard Park Community Center by the Illinois Commission on Delinquency Prevention. Defendant also provided informal counseling to teenagers and senior citizens at the center. His supervisor, Ken Jones, described him as an excellent worker, as did two former employers.

The presentence report added that defendant has a number of large debts incurred as a result of his failed businesses. Defendant had no prior convictions of any kind, and he reported that he has no drug or alcohol problem.

Attached to the presentence report were eight letters on defendant's behalf from relatives, co-workers and a former employer. The presentence report concluded by recommending that defendant be sentenced to a term of imprisonment. The report noted that defendant's history and record would seem to warrant a probation term, but the circumstances surrounding the offenses justify a prison term.

At the sentencing hearing, the State called Agent Hobbick who testified that he first met defendant on December 1, 1976, at a men's hair styling salon, where drug transactions were discussed. In later meetings with Hobbick, defendant discussed possible drug sales. On December 17, 1976, Hobbick met defendant at a parking lot in Springfield where defendant was to sell Hobbick 1000 barbiturates and a quarter ounce of cocaine. Defendant stated that he was unable to deliver the cocaine but sold the barbiturates for $225. Defendant told Hobbick of a new line of products, offered to get samples of them for Hobbick, and explained that he had been placed in charge of the Springfield area by those in Peoria who headed up the organization. Defendant was armed during this time. Hobbick arranged to purchase an ounce and a half of cocaine several weeks later, but defendant was late for that meeting, and the transaction never occurred.

During a transaction on January 26, 1977, at which the agent purchased from defendant a package of cocaine weighing 15.6 grams,

including packing material, for $850, defendant told Hobbick of problems in the Peoria drug operation and that those in charge were thinking about putting out a contract on possible informers. Defendant also told Hobbick that he could supply counterfeit currency and stolen vehicles and that he was lining up connections and had completed a $6,000 deal the day before.

On February 22, 1977, when Hobbick was purchasing 100 tablets of LSD from defendant for $230, defendant told Hobbick of a new type of pill he would sell for $3 apiece when he obtained them. Defendant later advised Hobbick that he wanted to start his own operation and asked if Hobbick wanted to join him. On March 30, 1977, Hobbick purchased cocaine and PCP from defendant for $5,050. Defendant was arrested shortly after the transaction was completed.

Testifying in mitigation were two persons from the Harvard Park Community Center in Springfield, a foster placement facility for wards of the court, where defendant was employed at the time of sentencing. Mark Brown, director of the center, testified that defendant, along with his maintenance functions, assisted with counseling delinquents at the center. Defendant had a good relationship with the children and worked very well with them. Brown further stated that defendant had applied for a position as house father at a home in Springfield, since the funding for his position at the Harvard Park Center was ending, and Brown indicated that he would personally recommend defendant for the position.

Marjorie Marr, a former parole officer who helped set up the Harvard Park Programs, also praised defendant's work at the center, describing him as a very dedicated person. During the course of his employment, he became more of a counselor than a maintenance man and worked very well with others. Ms. Marr, who was chairman of the board of the Springfield home, stated that she had interviewed defendant for the position of house father and would recommend that he be hired.

Defendant testified in his own behalf at the sentencing hearing, stating that he was intoxicated at the time of the conversation with Hobbick in which he claimed to be setting up his own organization and that he had been drinking beer for five hours and was merely bragging at the time. Defendant also expressed interest in working with juveniles as a career, and letters attesting to defendant's good character were introduced into evidence.

In sentencing defendant, the trial judge noted that defendant, at the time the instant offenses were committed, was 35 years of age, had a high school education with some college, and was an articulate individual who was neither "stupid nor dumb." It was impossible, reasoned the trial judge, for defendant not to have known that his criminal conduct would

cause or threaten serious physical harm to others. Defendant must have known that drugs cause serious physical harm to those who use them.

The trial judge determined that the instant transactions were not isolated deals nor did they involve the casual giving of a drug to a friend for a one-time use. Instead, the sale of the narcotics in the case at bar was part of an on-going business with at least two large deliveries involving several thousand dollars. Additionally, the judge observed that defendant was not induced to commit these crimes by reason of any alcoholic problems or personal drug addiction which might have explained his conduct. Rather, defendant was in the drug business purely for profit regardless of the effect or consequences on others.

Considering the nature of the offenses, the judge recognized that the offenses to which defendant had pleaded guilty were serious crimes, one being a Class 2 felony and the other a Class 3 felony. Furthermore, the trial judge found that there was no excuse or justification which would exonerate to any degree defendant's criminal conduct. The only reason put forth by defendant was that he needed money, which the trial judge did not consider adequate to excuse or justify the criminal conduct. As a result, the trial court found that defendant's criminal activity was a product of his own free will, with no articulable justification being established at the presentencing hearing which would have excused that conduct.

The fact that defendant was drawn into the illicit drug-trafficking business by an overpowering need for money led the trial judge to observe that such circumstances might reoccur sometime in the future. If defendant was once drawn into the drug-trafficking business because of the need for money, then if the need once again arose, the defendant would likely again engage in criminal transactions.

Referring to the mitigating testimony, the trial judge stated:

"Normally in a case with the aforementioned factors, a term of probation would appear to be an appropriate sentence. Unfortunately for the defendant, his case has other circumstances which would make a sentence of probation deprecate the seriousness of these offenses. Mr. Jones delivered a large amount of a Schedule I drug, cocaine; much larger than the amount involved in an average sale which appears before the Court. The police reports indicate that Mr. Jones was not a small street dealer. He actually had people working for him and attempted to include the drug agents in his new organization in Peoria. Finally, Mr. Jones by his own statement is not and never has been a drug addict. He was selling cocaine and L.S.D. for the monetary profit involved, not to feed his own drug habit. For these reasons, the most appropriate

sentence would appear to be a term in the Illinois Department of Corrections."

Finally, the trial judge recognized that defendant appeared before him with no prior history of a criminal conviction, but that the offenses to which defendant pleaded guilty occurred on two separate occasions. If defendant had any misgivings about his criminal conduct, he could have stopped it after the first delivery. However, it was only after defendant was caught that he changed his lifestyle and became involved in constructive activities.

After considering these factors, it was the trial judge's reasoned opinion that not only was defendant's imprisonment necessary to protect the public, but that the minimum term should be higher than that set by statute. A sentence other than imprisonment would be inconsistent with the ends of justice, and the sentences imposed would deter others from committing the same crime.

After the sentences were imposed, defendant filed a motion to withdraw his guilty pleas which was denied. Defendant then appealed, claiming that the sentences imposed were excessive in light of the defendant's history and his rehabilitory potential.

■ Although it is the policy of the State to prescribe penalties which are proportionate to the seriousness of the offense and which allow for the possibility of rehabilitation (Ill. Const. 1970, art. I., §11; *People v. Kish* (1978), 58 Ill. App. 3d 215, 374 N.E.2d 10), when a reviewing court is requested to exercise its powers to reduce sentences, that power is to be exercised cautiously since the trial court is always in a better position to determine the punishment to be imposed. (*People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344.) Should a reduction be deemed necessary, that determination is not based on judicial clemency. (*People v. Aristole* (1971), 131 Ill. App. 2d 175, 268 N.E.2d 277.) Instead, an abuse of discretion on the part of the trial court must be shown from a review of the record. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Cole* (1974), 23 Ill. App. 3d 620, 321 N.E.2d 71.) The same rule has been stated a little differently as requiring that the imposition of a sentence be demonstrated to be a great departure from the spirit and purpose of the law. *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Matthews* (1979), 69 Ill. App. 3d 65, 387 N.E.2d 10.

Traditionally, the factors to be considered by the trial court when imposing a sentence are the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Phillips* (1978), 58 Ill. App. 3d 109, 373 N.E.2d 1072.) To these factors the legislature has added others, including the nature and circumstances of the offense (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)), whether the unlawful delivery

involved a "most highly toxic controlled substance as reflected by" its inclusion in schedule I or II of the Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1100 *et seq.* and par. 1411(1)), whether the unlawful delivery involved an unusually large quantity as determined from its wholesale value (Ill. Rev. Stat. 1977, ch. 56½, par. 1411(2)), whether the conduct of the defendant caused or threatened serious harm (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(a)(1)), whether the defendant received compensation for committing the offense (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(a)(2)), and whether the sentence imposed is necessary to deter others from committing the same offense. Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(a)(7).

Defendant complains that some of these factors, specifically that the drug delivery threatened serious harm and was carried out for compensation, are present in virtually every unlawful delivery situation. A consideration of these factors, according to defendant, does not justify the sentences imposed. In support of this contention, defendant cites *People v. Kish* (1978), 58 Ill. App. 3d 215, 374 N.E.2d 10, in which this court determined a trial court could not impose a greater than minimum sentence solely because possession of a larger amount of a controlled substance indicates defendant is more than a casual user, since that consideration is built into the statutory minimum sentence required by the legislature.

■■ However, the case at bar does not involve the mere possession of a controlled substance, and the greater-than-minimum sentence was not imposed solely because of the quantities involved in the two transactions which resulted in convictions. Here, defendant is a dealer, not a casual user, and is a part of an organized distribution scheme. The Illinois General Assembly has expressed a legislative intent to treat the drug trafficker with greater severity than the unlawful user or the occasional petty distributors. (Ill. Rev. Stat. 1977, ch. 56½, par. 1100.) The facts of this case indicate that defendant was in the business of selling drugs for a profit. The scale of defendant's involvement and the circumstances surrounding these transactions were properly considered by the trial court as required by statute, and the sentences imposed did not constitute an abuse of discretion but were, in our opinion, fully appropriate under the facts of this case.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.