THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* A. D. CLARK, JR., Defendant-Appellant.

Third District   No. 79-344

Opinion filed March 26, 1980.

Sheldon W. Reagan, of Kankakee, for appellant.

Dennis A. Norden, of Kankakee, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the defendant, A. D. Clark, Jr. Originally, the defendant was convicted of murder and was sentenced to death by a three-judge panel. However, the Illinois Supreme Court vacated the death sentence, and on resentencing, a term of imprisonment of not less than 800 nor more than 2,400 years was imposed.

Initially, we must recognize that there exists a problem of jurisdiction in the appellate court. The second sentencing hearing was held on January 20, 1978, and the order sentencing the defendant to imprisonment was filed on February 6, 1978. No timely notice of appeal was filed following this determination, and a motion for leave to file late notice of appeal was not filed by the defendant until May 7, 1979. While this appeal can be disposed of on jurisdictional grounds (Ill. Rev. Stat. 1977, ch. 110A, par. 606(c); see also the opinion in the companion appeal of *People v. Williams* (1980), 82 Ill. App. 3d 681, 402 N.E.2d 440, having once allowed the motion for leave to file a late notice of appeal, this court will briefly address the issues raised.

■■■ One of the two issues raised is whether the trial court abused its discretion in imposing a sentence of not less than 800 nor more than 2,400 years. This court has many times discussed the standards to be employed

when reviewing the propriety of an indeterminate sentence. When a reviewing court is requested to exercise its power to reduce sentences, that power is to be exercised cautiously (*People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344), and the standard for determining whether a reduction is necessary is not merely judicial clemency (*People v. Aristole* (1971), 131 Ill. App. 2d 175, 268 N.E.2d 227), but whether an abuse of discretion is shown from a review of the record (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Cole* (1974), 23 Ill. App. 3d 620, 321 N.E.2d 71).

At the time of the defendant's conviction the maximum term of imprisonment for murder was any term in excess of 14 years. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(1).) The minimum term was 14 years, "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum * * *." Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1).

The defendant's prior criminal record is extensive. As a juvenile, the defendant was convicted of auto larceny, assault with a weapon, and battery, over a four-year period. Over the next four years, the defendant was convicted as an adult of battery, resisting a police officer, driving without a valid driver's license and improperly starting a parked motor vehicle, battery, disorderly conduct, disobeying a stop sign, resisting a peace officer, and burglary. While in custody awaiting resentencing, the defendant had been punished for six separate conduct violations.

The factual basis for the instant conviction was stated in the presentence report as follows:

"In the early morning hours of March 30, 1974, A. D. Clark, Jr., his younger brother, Ernest Jerome Clark, and their friend, Otis Williams, stole an automobile from a neighbor, General Johnson and drove it to the Pembroke Market. They backed the car, a station wagon, up to the service entrance, broke into the market and opened the service door. They then loaded the back of the auto with approximately 180-200 packages of fresh meat, candy, cigarettes, fruit and vegetables.

About ½ mile away from the supermarket, the car broke down. They went to the home of Mrs. Clark, mother of A. D. Clark and Ernest Clark, and borrowed another car. The meat and merchandise were transferred to this second car and taken to the Williams' house. Otis Williams' father refused to accept the stolen goods, so they were taken to Mr. Clark's house where they were transferred to his auto. He took the stolen goods to General Johnson's, the same person from whom the station wagon was stolen, and stored the meat in his freezer. Police investigation was begun and it lead [*sic*] to the trailer home of General Johnson, and

in that trailer police officers observed the large quantity of meat which had been previously stored there by the above accused persons. Subsequently A. D. Clark, Jr. and Otis Williams broke into General Johnson's house and retrieved the meat from the freezer. During the course of the investigation General Johnson discussed the meat with several police officers.

On the night of April 11, 1974, Otis Williams and A. D. Clark, Jr. went to General Johnson's trailer home. At that time they confronted General Johnson, Othella Covington, A. D. Clark's father and his girl friend, and at that time threatened to kill General Johnson because of the information he had given the police with respect to the burglary, and to prevent their prosecution for that burglary. Later that evening they returned to the trailer home at which time only General Johnson and Othella Covington were present. Both General Johnson and Othella Covington were struck numerous times about the head and neck with hatchets by Otis Williams and A. D. Clark, Jr. Subsequently, their bodies were piled on the living room couch, doused with gasoline and set on fire—the apparent motive being to prevent their testimony in a burglary prosecution."

Considering the nature and circumstances of the offense and the history and character of the defendant, we do not believe the trial court abused its discretion.

█ █ The only other issue raised by the defendant is whether he was deprived of due process of law as the result of the incompetence of his privately retained attorney. A defendant in a criminal case is entitled to reasonably competent representation at the sentencing stage. (*People v. Green* (1975), 34 Ill. App. 3d 153, 340 N.E.2d 58.) A reviewing court will reverse a conviction based on the incompetency of privately retained counsel only if the representation is of such low caliber as to amount to no representation at all or it reduces the court proceeding to a farce or sham. *People v. Redmond* (1972), 50 Ill. 2d 313, 278 N.E.2d 766.

First, the defendant complains that his counsel failed to read the presentence report. However, as the defense counsel pointed out to the trial court, this attorney was familiar with the facts of the case and the background of the defendant because he successfully handled the appeal challenging the imposition of the death sentence.

█ Certainly counsel should have perused the report, but his failure to do so did not reduce the sentencing hearing to a sham. Nor did the defense counsel's argument to the court.

In this appeal, the defendant attacks the argument of defense counsel by isolating certain statements made during the argument. However, read as a whole, the argument is an intelligent attempt to employ the tactic of

placing the defendant and his co-defendant in the merciful hands of the court. In seeking the mercy of the trial court, defense counsel pointed out that it is not the place of the court to seek revenge for the victims. Given the nature and circumstances of the offenses committed and the history and character of the defendant, it is understandable that the defense counsel might consider this tactic most successful.

Since the sentencing proceeding was not reduced to a farce or sham, we find no incompetence of this privately retained counsel which would warrant a reversal of this cause. Accordingly, the judgment of the circuit court of Kankakee County is affirmed, and the appeal is dismissed.

Judgment affirmed, appeal dismissed.

BARRY and STENGEL, JJ., concur.