THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CURTIS GREEN, Defendant-Appellant.

Third District    No. 3—91—0483

Opinion filed August 21, 1992.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Following a jury trial, the defendant, Curtis Green, was convicted of first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1). He was sentenced to a term of natural life imprisonment. He appeals.

At trial, Lenette Barth testified that she was the sister of the victim, Sandra Mason. Mason had lived with the defendant for several years but had ended the relationship. On November 18, 1990, Barth, her husband Bernard, and Mason went to a home that Mason had shared with the defendant. Mason needed to pick up some personal items, and Bernard wished to disconnect the telephone so that the defendant could not continue making harassing calls to Mason. The defendant was there when they arrived. He became angry and argued with Mason. Mason subsequently left.

Lisa Bowers testified that she worked with Mason as a nurse at the Good Samaritan Nursing Home in East Peoria. On November 18, 1990, at approximately 6 p.m., Bowers saw the defendant enter the

nursing home carrying a knife. Mason, who had been standing near the door, screamed, "Oh, my God, help me!" The defendant ran up to Mason, hit her, pushed her against the wall, and started stabbing her. Mason fell to the floor and struggled to get up, but after the defendant stabbed her some more, she fell to the floor again. Bowers called the police and ran into a back room.

There were several other witnesses to the stabbing. None of them observed the beginning of the incident. However, after the stabbing began, one of the witnesses, Ronald Sarver, ran forward and hit the defendant with a lamp. The defendant stopped momentarily but then continued to stab Mason. Sarver also threw a chair at the defendant, yet the stabbing continued. Ultimately, though, the defendant stopped, walked over to the nurse's station, and stood there until the police arrived.

East Peoria Officer Pete Fisher was one of the first to reach the scene. He found the defendant standing at the nurse's station bleeding from his hands. He then found Mason lying in a pool of blood down the hall. The officer asked where the knife was, and the defendant told him that he did not know.

Other East Peoria officers also arrived after Officer Fisher. Officer Lee Mauschbaugh found the defendant to be slow moving but cooperative. He heard the defendant say, "I'm already dead, why don't you shoot me?" Lieutenant Charles Morgan also heard the defendant ask police to shoot him.

Mason was taken from the scene and transported to the hospital, where she was declared dead. Dr. Mary Jumbelic, a forensic pathologist, performed an autopsy on Mason's body. Dr. Jumbelic found 30 stab wounds, over 100 incised wounds, and 4 puncture wounds. The witness concluded that these wounds had caused Mason's death.

The defense called several witnesses who indicated that the defendant had a good reputation for peacefulness and nonviolence.

Dr. Robert A. Chapman, a practicing psychiatrist, testified that he found the defendant to be illiterate and educationally disabled. Dr. Chapman concluded that the defendant suffered from a substantial disorder which would have impaired his judgment on November 18. However, the disorder did not rise to the level of insanity.

The defendant testified on his own behalf. He recalled that Mason and two of her relatives came to his house on November 17. He did not argue with Mason at that time. He later noticed that his telephone had been disconnected. Still later, after leaving the house and coming back, he noticed that his furniture was gone and the gas was off. He spent that night at an ex-girlfriend's home and left the next

morning. He smoked cocaine and rode around for some time before calling Mason at work. Mason said she was busy and did not have time to talk.

At approximately 6 p.m., he drove to the nursing home to talk to Mason. He walked into the nursing home, quickly found Mason, and tried to speak to her. Mason told him she was "prepared for him." She ran to the nurse's station, came back with a knife, and cut the defendant's hand. The defendant grabbed for the knife and was able to take it away from Mason after they fell. The defendant then stabbed Mason with the knife several times. Afterwards, he waited for the police to come. The defendant insisted that he had not come to the nursing home to hurt Mason and that he was surprised when she came at him with the knife.

Following the defendant's testimony, the State presented evidence in rebuttal.

Dr. James A. Thomas testified that following the incident, he treated the defendant for cut wounds to his hands. Dr. Thomas indicated that the locations of the defendant's cuts were not consistent with the cuts someone would suffer when he grabbed a knife away from another person. Rather, they were consistent with the wounds someone would suffer when his hands slipped while stabbing someone.

Yolanda Richards testified that the defendant had a bad reputation for peacefulness.

Lisa Bowers and Officer Lee Mauschbaugh offered testimony regarding the defendant's telephone conversation with Mason on November 18. The defense objected to the testimony. The court heard argument on the point and ultimately ruled that the evidence was admissible to establish Mason's state of mind.

Bowers testified that on November 18 Mason received a call at the nursing home. Bowers heard Mason use the name "Curtis" and say, "Don't bother me, leave me alone, and don't call me at work." Upon leaving the telephone, Mason told Bowers that the defendant had threatened her. Mason also told Bowers that she should call 911 if the defendant came to the nursing home.

Officer Mauschbaugh testified that he was called to the nursing home on the afternoon of the 18th. After he arrived, Mason reported to him that the defendant had threatened her in the course of a telephone call.

The jury subsequently found the defendant guilty of murder. At the sentencing hearing, the State presented evidence in aggravation. Teresa Porter and James E. Jordan recalled an incident in March of 1990 in which the defendant dragged Mason from a bar and hit her.

The defense responded with testimony showing that the defendant was a good father and worker and that he was peaceful and quiet. The defendant also assumed the stand and denied dragging Mason from the bar and hitting her. The presentence investigation report disclosed that the defendant had previously been convicted of various traffic offenses and unlawful use of weapons.

The court then ordered the defendant to serve a term of natural life imprisonment. The defendant appeals.

The defendant first argues that the trial court erred in admitting the testimony of Bowers and Officer Mauschbaugh regarding the defendant's threatening telephone call to Mason. The defendant contends that this testimony was inadmissible hearsay.

■ Statements which indicate the declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable to testify, there is a reasonable probability that the proffered hearsay statements are truthful, and the statements are relevant to a material issue in the case. *People v. Floyd* (1984), 103 Ill. 2d 541, 470 N.E.2d 293.

■ In the instant case, the declarant was unavailable to testify due to her death. Accordingly, we find that the first requirement for admissibility was satisfied.

Turning to the requirement of the probability of truthfulness, we note that Mason was overheard talking to the defendant at the time the threats were allegedly made. Additionally, immediately after finishing her conversation with the defendant, Mason told Bowers that the defendant had threatened her. Finally, we note that Mason took the extra step of reporting the threat to the police. While it is possible that Mason might lie to Bowers, it is doubtful that she would have bothered to report the incident to the police had she not genuinely been threatened by the defendant. Accordingly, we find that there was a reasonable probability that the proffered statements were truthful.

We now turn our attention to whether the statements were relevant to a material issue in the case. We note that throughout the trial, the theory of the defense was that the defendant was guilty of second degree murder rather than first degree murder. The defendant contended that he was acting under a sudden and intense passion resulting from serious provocation by the deceased. By suggesting that Mason provoked the attack, the defendant made Mason's state of mind a material issue. Additionally, the testimony in question was relevant because it tended to establish that Mason was so intimidated by the defendant that she sought the protection of a co-worker and the po-

lice. It implied that Mason would act defensively when confronted by the defendant rather than aggressively. Accordingly, we conclude that the testimony in question was not inadmissible hearsay.

■ The defendant also argues that the testimony regarding the threatening telephone call should not have been admitted because it violated the confrontation clauses of the both the Illinois Constitution (Ill. Const. 1970, art. I, §8) and the United States Constitution (U.S. Const., amend. VI). We disagree.

When a hearsay declarant is not present for cross-examination at trial, the confrontation clause normally requires a showing that he is unavailable and that the statement bears adequate indicia of reliability. *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531.

As we previously noted, the declarant in the instant case was unavailable because she was dead. Further, we find that the statements bore adequate indicia of reliability for reasons set forth in our discussion of the probable truthfulness of the testimony. Accordingly, we conclude that the admission of the statements in question did not constitute a violation of the confrontation clauses of either our State's Constitution or the Federal Constitution.

■ The defendant's final contention on appeal is that the trial court abused its discretion when it sentenced him to natural life imprisonment.

It is presumed that the trial judge considered any mitigating evidence before him. (*People v. Sawyer* (1985), 139 Ill. App. 3d 383, 487 N.E.2d 662.) Sentencing is a matter of judicial discretion, and absent an abuse of that discretion by the trial judge, a sentence may not be altered on review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) When a reviewing court is requested to exercise its power to reduce a sentence, that power must be exercised cautiously and the court will not engage in mere judicial clemency. (*People v. Clark* (1980), 82 Ill. App. 3d 490, 402 N.E.2d 437.) A reviewing court cannot substitute its judgment for that of the trial court simply because it would have balanced the factors differently. *People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.

In the instant case, the court noted that the defendant was retarded and had children who might suffer as a result of the defendant's incarceration. The trial court also noted that the defendant's criminal history was not extensive. However, the trial court found that the instant crime was brutal, heinous, and indicative of wanton cruelty. The court further concluded that the defendant was likely to

commit another crime. Based on the aggravating factors, we find that the sentence was not an abuse of discretion.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

McCUSKEY and HAASE, JJ., concur.